IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| JUAN CARLOS MELÉNDEZ-SERRANO, **Petitioner,** v. ANA ESCOBAR-PABÓN, DOMINGO EMANUELLI-HERNÁNDEZ and VÍCTOR MALDONADO, **Respondents.** | **Civil No.** 20-1588 (FAB) |

OPINON AND ORDER

BESOSA, District Judge

Respondents Ana Escobar-Pabón, Domingo Emanuelli-Hernández, and Víctor Maldonado (collectively, "respondents") have moved to dismiss petitioner Juan Carlos Meléndez-Serrano ("Meléndez")'s second amended petition for *habeas corpus* relief. (Docket No. 51.) For the reasons set forth below, the respondents' motion to dismiss is **DENIED**.

I.  **Background**

Meléndez is serving the first of three consecutive ninety-nine-year terms of imprisonment for the murders of Haydée Teresa Maymí-Rodríguez ("Teresa") and her two children, Eduardo Enrique and Melissa Morales-Maymí. See Puerto Rico v. Meléndez, CR-93-43 (P.R. Super. Ct. Jan. 26, 1999) (Judgment). A thorough summary of these horrific murders, the resulting investigation by the Puerto

Rico Police Department, and the ten-day trial is set forth in
Ramos-Cruz v. Emanuelli-Hernández, Case No. 20-1589, 2024 U.S.
LEXIS 179921 (D.P.R. Sept. 30, 2024) (Besosa, J.).  Essentially,
prosecutor Andrés Rodríguez-Elías ("Rodríguez") alleged that
Meléndez and Antonio Ramos-Cruz ("Ramos") attempted to sexually
assault Teresa at approximately 4:00 a.m. on June 25, 1989.  Id.
at *5 and 23.[1]  They then purportedly stabbed Teresa and her
children to death with a kitchen knife.  Id.  The joint trial
occurred before the Puerto Rico Court of First Instance, Carolina
Division.  (Docket No. 47 at p. 7.)  The jury returned a guilty
verdict for both defendants on April 10, 1992.  (Docket No. 47 at
p. 7.)

     Meléndez and Ramos subsequently filed direct appeals.  Id.
The Puerto Rico Court of Appeals affirmed their convictions on
January 26, 1999, holding that "there was enough evidence for a
jury to [infer] that all of the elements of murder in the first
degree were present, and to connect the defendants to the crime."
El Pueblo de P.R. v. Cruz, Case No. KLCE201701397, 2019 WL 2232528,

---

[1] Rodríguez also prosecuted José Luis Latorre, José Caro-Pérez, Nelson Ruiz-
Colón ("Ruiz"), and Nelson Ortiz-Álvarez in the late 1980s and early 1990s.
(Docket No. 39 at p. 6.)  These defendants were wrongfully convicted and released
after prevailing in post-conviction litigation.  Id.  Ruiz later alleged, *inter
alia*, that Rodríguez "provided the two main witnesses in [his] criminal trial,
with statements and photographs that were used by the witnesses to concoct a
false story regarding their personal knowledge of the facts of the case."  See
Ruiz-Colón v. Rodríguez-Elías, Civil No. 17-2223 (WGY) (D.P.R. Sept. 23, 2017)
(Docket No. 1 at p. 16) (Complaint filed pursuant to 42 U.S.C. § 1983).

at *3 (P.R. Cir. Mar. 13, 2019) (Case No. 20-1589, Docket No. 52,
Ex. 1) (certified English translation).

### A.    The 2003 *Habeas Corpus* Petition

On January 17, 2003, Meléndez moved for federal relief
pursuant to the Antiterrorism and Effective Death Penalty Act of
1996 ("AEPDA"), 28 U.S.C. section 2254 ("section 2254").    See
Meléndez-Serrano v. El Pueblo de Puerto Rico, Case No. 03-1050
(PG), Docket No. 1.)  He completed the 2003 *habeas corpus* petition
by answering in Spanish the matters on the English section 2254
form for state prisoners.    Id.    United States Magistrate Judge
Jesús Antonio Castellanos ("Castellanos") denied Meléndez's motion
for the appointment of counsel, incorrectly ordering **him** (not the
Commonwealth respondents) to obtain and submit copies of the
relevant post-conviction dispositions issued by the Puerto Rico
appellate courts from his prison cell at the Bayamón 501
Correctional Institution.    Id., Docket No. 8 (emphasis added)
contra Pliler v. Ford, 542 U.S. 225, 232 (2004) ("[Petitioners]
are not required by 28 U.S.C. § 2254 or the Rules Governing Section
2254 Cases to attach to their petitions, or to file separately,
state-court records") (citing R. Hertz & J. Liebman, Fed. *Habeas
Corpus* Practice & Procedure § 15.2c, p. 711 (4th ed. 2001) ("Most
petitioners do not have the ability to submit the record with the
petition, and the statute and rules relieve them of any obligation

to do so and require the state to furnish the record with the answer.")).

The magistrate judge's order thus required that Meléndez bear the responsibility of obtaining records from the Puerto Rico Court of First Instance, the Puerto Rico Court of Appeals and Puerto Rico Supreme Court to demonstrate exhaustion of state remedies, a Herculean endeavor for a state prisoner without access to the internet or sufficient funds. Indeed, just three years ago the Puerto Rico Department of Justice repeatedly attempted to locate the same court records from the central registry and their own files without success. See Civil No. 20-1589, Docket No. 71, Ex. 1 at p. 11 (e-mail from the Commonwealth of Puerto Rico Federal Litigation and Bankruptcy Division detailing efforts to obtain state court records). Unsurprisingly, and because it was the Commonwealth respondents' requirement, Meléndez did not file the state court record. Accordingly, and incorrectly, Magistrate Judge Castellanos recommended that the Court dismiss Meléndez's section 2254 petition for "failure to prosecute." Serrano v. El Pueblo de Puerto Rico, Case No. 03-1050, 2004 U.S. Dist. LEXIS 2766, at *3 (D.P.R. Jan. 28, 2004) (Castellanos, Mag. J.). The Court adopted Magistrate Judge Castellano's recommendation on

June 23, 2004, dismissing Meléndez's section 2254 petition with prejudice.  (Case No. 03-1050, Docket Nos. 14 and 15.)[2]

**B.    The 2011 Motion for a New Trial**

In 2010, a serological analysis of hairs recovered from Teresa's underwear excluded Meléndez and Ramos as the donors. (Docket No. 47 at p. 8.)  In sum, the hairs recovered from the crime scene belonged to a person other than Meléndez [or Ramos]. Id.  On February 10, 2011, Ramos and Meléndez moved for a new trial pursuant to Puerto Rico Criminal Procedure Rule 192.1 ("Rule 192.1"), citing "(1) the alleged inappropriate conduct of Prosecutor Andrés Rodríguez-Elías, and (2) new evidence based on the results of a serological test of three pubic hairs taken from underwear belonging to [Teresa] and one body hair found on a piece

---

[2] A dismissal for failure to prosecute operates as an adjudication on the merits. Fed. R. Civ. P. 41(b).  The Court notes, however, that Meléndez's 2003 *habeas corpus* petition, though in an English language form document, was completed by Meléndez answering in Spanish.  Pursuant to the Jones Act, all "pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."  48 U.S.C. § 864.  This Court cannot "consider any untranslated documents placed before [it]."  United States v. Millán-Isaac, 749 F.3d 57, 64 (1st Cir. 2014).  Accordingly, the Magistrate Judge could not have identified the causes of action or addressed the arguments contained in the 2003 *habeas corpus* petition.  Another glaring mistake by the Magistrate Judge.

of clothing belonging to [her son]." Id. at p. 5.[3]  The Court of First Instance denied this motion for two reasons.  First, Meléndez and Ramos knew of the alleged misconduct at the time of trial but failed to assert a timely objection.  Cruz, 2019 WL 2232528, at *4. Second, serological hair comparisons "existed in 1992."  Id.  The Court of First Instance suggested that Meléndez and Ramos perform a mitochondrial deoxyribonucleic acid ("mtDNA") test, but this technology "was not [yet] available in Puerto Rico."  Id.

On January 29, 2016, the Puerto Rico legislature enacted the Post Judgment DNA Analysis Act, P.R. Laws Ann. tit. 34, sections 4201 et seq.  Cruz, 2019 WL 2232528, at *4.[4]  A month

---

[3] Puerto Rico courts "may in like manner at the request of the defendant grant a new trial if, after the sentence is pronounced, new facts or new evidence are found of a nature tending to establish defendant's innocence."  P.R. Laws Ann. tit. 34, R. 192.1.  Rule 192.1.1 provides that "[a]ny person who is imprisoned by virtue of a judgment rendered by any Division of the Court of First Instance" may move to vacate, set aside, or correct the judgment if:

    (1) The sentence was imposed in violation of the Constitution of the laws of the Commonwealth of Puerto Rico or of the Constitution and laws of the United States; or

    (2) The court lacked jurisdiction to impose such a sentence; or

    (3) The sentence imposed exceeds the penalty prescribed by law; or

    (4) The sentence is subject to collateral attack for any reason.

Id. R. 192.1.1.

[4] A certified English translation of the Post Judgment DNA Analysis Act is not yet available.  Neither has it been codified in the English version of Laws of Puerto Rico Annotated.  According to the Innocence Project, this legislation "grant[s] statutory access to DNA testing which could prove innocence and enable law enforcement to identify the truly guilty."  Nick Moroni, Puerto Rico Enacts Post-Conviction DNA Testing Law (Dec. 30, 2015) (available as of Sept. 9, 2022 at https://innocenceproject.org/puerto-rico-enacts-post-conviction-dna-testing-law/).

later, Meléndez and Ramos requested that the Court of First
Instance allow the Puerto Rico Institute of Forensic Sciences
("IFS") perform an mtDNA analysis. Id. The Court of First
Instance granted this motion without objection from the Puerto
Rico Department of Justice. Id. This report excluded Meléndez
and Ramos from the population of potential donors: The hairs on
Teresa's underwear belong either to her (the victim) or a
matrilineal relative. Id. at *5.

    **C.    The 2016 Motion for a New Trial**

        Meléndez and Ramos subsequently filed a second motion
for a new trial pursuant to Rule 192.1. (Docket No. 39 at p. 14.)
A new trial is warranted if:

> upon analyzing the new evidence along with the
> [evidence] presented during the original trial in the
> manner most favorable to the guilty verdict or ruling
> being challenged, **said evidence could have created
> reasonable doubt** in the trier of facts as to the guilt
> of the petitioner.

Cruz, 2019 WL 2232528, at *18 (citing Pueblo v. Marcano-Parrilla,
152 D.P.R. 557 (2000)) (emphasis in original); see People v.
Morales-Rivera, 1984 PR Sup. LEXIS 87 (official translation), 115
D.P.R. 107 (1984) (noting that Courts adjudicate Rule 192.1 motions

by "[asking] whether said new evidence would have changed the guilty verdict in the present case").[5]

According to Meléndez and Ramos, the mtDNA report "irrefutably reveals that the pubic hairs collected from the panties belonging to Ms. Maymí do not belong to either of the two men unjustly convicted of this crime, whose motive was sexual assault and that, consequently, they are excluded as the murderers of Ms. Maymí and her two children." Cruz, 2019 WL 2232528, at *5. The Court of First Instance granted the Rule 192.1 motion and ordered a new trial. Id. at *8.

The Puerto Rico Department of Justice appealed. Id. at p. 9. The Puerto Rico Court of Appeals, in a 2-1 opinion by Judge Waldemar Rivera-Torres joined by Judge Luisa Colom-García, determined that the mtDNA evidence could not have been discovered in 1999, was not cumulative, and was credible. Cruz, 2019 WL 2232528, at *21-24. It disagreed, however, with the proposition that mtDNA is more credible than hair comparison despite explicit testimony that the mtDNA test is "more convincing." Id. at *24. The Puerto Rico Court of Appeals reversed the Court of First Instance on May 7, 2019. Id. On November 1, 2019, the Puerto

---

[5] To prevail on a Rule 192.1 motion, the petitioner must also establish that the newly discovered evidence "(1) could not have been discerned with reasonable diligence before trial; (2) is not merely cumulative; (3) is not rebuttal evidence; [and] (4) is credible." (Docket No. 52, Ex. 1 at p. 16) (citing Pueblo v. Rodríguez, 193 D.P.R. 987, 998-1000 (2015)).

Rico Supreme Court denied Meléndez and Ramos' subsequent petition for *certiorari*.  (Docket No. 47 at p. 10.)

### D.    The 2020 *Habeas Corpus* Petition

Meléndez filed a *pro se* section 2254 petition in this Court on October 27, 2020.  (Docket No. 1.)[6]  The Court (Judge William G. Young, sitting by designation) dismissed this petition on March 21, 2022 "for failure to prosecute."  (Docket No. 12.) The First Circuit Court of Appeals vacated the dismissal judgment, however, "[questioning] whether the district court would have dismissed for failure to prosecute had it been aware of the full extent of prior mailing issues [in the case], and [that] the dismissal, though expressly labeled 'without prejudice,' could have real ramifications, see 28 U.S.C. § 2244(d) (statute of limitations)." Meléndez-Serrano v. Emanuelli-Hernández, Case No. 22-1316 (1st Cir. May 3, 2023) (Judgment).

On remand, on July 26, 2023, the Court granted Meléndez's motion for the appointment of counsel, ordering him to file an amended petition on August 18, 2023.  (Docket No. 29.)  After several motions for extension of time and a warning by the Court, Meléndez filed an amended petition on November 9, 2023.  (Docket

---

[6] Ramos also filed a section 2254 petition on October 27, 2020.  (Case No. 20-1589, Docket No. 1.)  The Court granted Ramos' petition for a new trial on September 30, 2024. Ramos-Cruz, No. 20-1589 (FAB), 2024 U.S. Dist. LEXIS 179921 (D.P.R. Sept. 30, 2024).  The Commonwealth of Puerto Rico filed a notice of appeal.  No. 20-1589 (FAB), Docket No. 233.

No. 36.)  The Clerk of the Court then transferred this action to
the undersigned judge on June 14, 2024.  (Docket No. 37.)  Two
months later, on August 8, 2024, Meléndez filed a second amended
petition to resolve "procedural issues."  (Docket Nos. 47 and 48.)

In this second amended petition, Meléndez sets forth
three causes of action.  (Docket No. 47.)  First, Meléndez contends
that due process "require[s] a new trial based on [the mtDNA]
evidence," Id. at p. 24, alleging that the Puerto Rico Court of
Appeals purportedly erred by concluding that "the new
mitochondrial DNA evidence was not likely to change the result at
trial" in violation of clearly established federal law.  Id. at p.
35.  Second, he asserts that the Puerto Rico Court of Appeals
relied on an "unreasonable determination of the facts in light of
the evidence presented in the trial court evidentiary hearing."
Id. at p. 39.  Third, Meléndez sets forth a claim of actual
innocence.  Id. at p. 41.

The respondents then moved to dismiss the second amended
petition, contending that this pleading constitutes a "second or
successive" request for federal relief, falling within the purview
of 28 U.S.C. section 2244(b) ("section 2244(b)").  (Docket No. 51
at p. 2.)  Meléndez responded, and the respondents replied.
(Docket Nos. 60 and 63.)

## II.  The Anti-Terrorism and Effective Death Penalty Act

"Federal *habeas* review of [a] state-court conviction is governed by the AEDPA." Foxworth v. St. Amand, 570 F.3d 414, 424 (1st Cir. 2009); 28 U.S.C. § 2254.  Petitioners invoke the AEDPA to invalidate "the judgment authorizing [their] confinement." Magwood v. Patterson, 561 U.S. 320, 321 (2010) (citation and quotation omitted).  Congress enacted this statute "to further the principles of comity, finality, and federalism." Kholi v. Wall, 582 F.3d 147, 154 (1st Cir. 2009) (quoting Williams v. Taylor, 529 U.S. 420, 436 (2000)).  Courts "shall entertain an application for a writ of *habeas corpus* . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).[7]  To attain *habeas corpus* relief, a petitioner must show that he or she has either exhausted all state court remedies for each claim raised, or excused from exhausting those remedies because of an absence of available or effective state corrective processes.  See 28 U.S.C. §§ 2254(b)-(c).

A state court conviction will survive *habeas corpus* review unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[7] "Although 28 U.S.C. § 2244(b) refers to a *habeas corpus* 'application,' [courts] use the word 'petition' interchangeably with the word 'application.'" Magwood, 561 U.S. at 324 n.1.

established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

Id. § 2254(d). "[W]hen the last state court to decide a prison's
federal claim explains its decision on the merits in a reasoned
opinion [*i.e.* the Puerto Rico Court of Appeals' decision denying
Meléndez's second motion for a new trial], a federal *habeas* court
simply reviews the specific reasons given by the state court and
defers to those reasons if they are reasonable." Porter v. Coyne-
Fague, 35 F.4th 68, 75 (1st Cir. 2022) (quoting Wilson v. Sellers,
138 S. Ct. 1188, 1192 (2018)).

## A.    Successive Petitions

Common law imposed no limitations on successive
applications, permitting the judiciary to entertain a "endless"
deluge of "petitions after a court's denial of *habeas* relief."
McClesky v. Zant, 499 U.S. 467, 479 (1991). The Supreme Court
modified the common law approach, holding that *res judicata* and
the abuse of writ doctrine are applicable in the *habeas corpus*
context. Brown v. Atchley, 76 F.4th 862, 865-66 (9th Cir. 2023)
("[C]ourts [now] had discretion to dismiss a petition based on a
prior denial of the same claim in an earlier petition," and
"failure to bring a claim in a prior petition (if the claim [which]

had been available at the time constituted an abuse of writ")
(citing <u>Salinger v. Loisel</u>, 265 U.S. 224 (1924); <u>Delo v. Stokes</u>,
495 U.S. 320, 321-22 (1990)).

Congress embraced these restrictions, incorporating *res
judicata* and abuse of writ principles in the AEDPA.  Pursuant to
the current regime, state prisoners must "raise all available
claims for *habeas* relief in one *habeas* petition, so that a court
may make one unitary decision as to all such grounds."  4 Moore
Fed. Rules Pamphlet § 2244.2 (2024).  The AEDPA "establishes a
gatekeeping mechanism for the consideration of second or
successive *habeas corpus* applications."  <u>Stewart v. Martínez-
Villareal</u>, 523 U.S. 637, 639 (1998) (internal quotation and
citation omitted).  This mechanism mandates that "applicant[s]
shall move in the appropriate court of appeals for an order
authorizing the district court to consider the [successive]
application."  28 U.S.C. § 2244(b)(3).[8]  Accordingly, failure to
obtain authorization from the First Circuit Court of Appeals would
divest this Court of jurisdiction to adjudicate Meléndez's 2020
*habeas corpus* application.  <u>See</u> <u>In re Bradford</u>, 830 F.3d 1273,
1277 (11th Cir. 2016) ("[When] a petitioner fails to seek

---

[8] Pursuant to Rule 9 of the Rules Governing Section 2254 Cases, "[before]
presenting a second or successive petition, the petitioner must obtain an order
from the appropriate court of appeals authorizing the district court to consider
the petition as required by 28 U.S.C. § 2244(b)(3) and (4)."

permission from the court of appeals to file a second or successive petition, the district court lacks jurisdiction to consider it.") (citing <u>Burton v. Stewart</u>, 549 U.S. 147, 152-57 (2007)).

Section 2244(b) also provides that a "claim presented in a second or successive *habeas corpus* application under section 2254 that was not presented in a prior application shall he dismissed" unless:

> (A)  The applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(1)  The factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (2) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

## III. Discussion

The respondents indicate that Meléndez filed a *habeas corpus* application in 2003.  (Docket No. 51 at p. 9.)  According to the respondents, Meléndez's 2020 application constitutes a "successive petition" within the meaning of section 2244.  <u>Id.</u>  Because Meléndez "failed to seek authorization from the First Circuit Court

to file the [2020 petition]," the respondents maintain that "this Court lacks jurisdiction to entertain the same." Id.

The term "second of successive" in sections 2244(b) and (c) is a "term of art," however, requiring a nuanced analysis that extends beyond a mechanical comparison of filing dates. Magwood, 561 U.S. at 602. The respondents rely on a myopic understanding of the law. Not every section 2254 petition filed after an initial request for *habeas corpus* relief is considered a "second" or "successive" application. The Supreme Court has recognized two scenarios in which a second-in-time petition is exempt from the gatekeeping provisions in sections 2244(b) and (c).

A. **Magwood v. Patterson: The Intervening Judgment Exclusion**

The district court in Magwood granted a death row inmate's first *habeas corpus* petition, mandating that the petitioner be released or resentenced. 561 U.S. at 323. The Alabama state court conducted a new sentencing hearing and again imposed the death penalty. Id. The petitioner filed a second *habeas* application, challenging this new sentence. Id. The Eleventh Circuit Court of Appeals subsequently dismissed this application, holding that it was an "unreviewable 'second or successive' challenge under 28 U.S.C. § 2244(b) because he could

have mounted the same challenge to his original death sentence."
Id.

The Supreme Court reversed the Eleventh Circuit Court of
Appeals, emphasizing that a section 2254 petitioner "seeks
**invalidation** (in whole or in part) **of the judgment** authorizing the
prisoner's confinement."  561 U.S. at 603 (emphasis in original).
Accordingly, "both § 2254 and the relief it provides indicate that
the phrase 'second or successive' must be interpreted with respect
to the judgment challenged."  Id.  The second *habeas corpus*
petition in Magwood was the "**first** application challenging an
intervening judgment [*i.e.* the second death sentence imposed after
the first *habeas* petition]."  Id. at 607 (emphasis in original).

The Magwood court "[concluded] that [the petitioner's]
first application challenged his new sentence under the 1986
judgment [and was] not 'second or successive' under § 2244(b)."
Id. at 342, 328 (citing 2 R. Hertz & J. Liebman, Fed. *Habeas* Corpus
Practice and Procedure § 28.3b(i), p. 1412 (5th ed. 2005) ("When
a petitioner files a second or successive petition to challenge a
criminal judgment **other than** the one attacked in an earlier
petition, it cannot be said that the two petitions are
'successive.'") (emphasis in original).  "Even though the two
judgments imposed upon him the same sentence of death, they were
different 'judgments' nonetheless – each permitting their own

'applications' for *habeas* relief under AEDPA." <u>Chambers v. Lilly</u>, Case No. 22-4368, 2024 U.S. Dist. LEXIS 98257, at *46 (E.D.N.Y. June 3, 2024).

     **1.**   **Meléndez's 2020 *Habeas Corpus* Petition Attacks an Intervening Judgment, Rendering Section 2244 Inapplicable**

       To invoke <u>Magwood</u> and circumvent section 2244, Meléndez must demonstrate the existence of an intervening judgment. "[The] judgment to which AEDPA refers is the underlying conviction and the most recent sentence that authorizes the petitioner's current detention." <u>Ferreira v. Sec'y, Dep't of Corr.</u>, 755 F.3d 1273, 1292 (11th Cir. 2007); <u>see</u> <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993) ("[A] judgment of conviction includes both the adjudication of guilt and the sentence."). The procedural posture of this litigation is unusual and convoluted, including the following events that are particularly relevant to the Court's analysis: (1) the 1992 conviction and imposition of sentence, (2) the 2003 *habeas corpus* petition filed in this Court, (3) the dismissal of the 2003 petition with prejudice, (4) the Court of First Instance granting Meléndez's request for a new trial and vacating his conviction in 2016, (5) the Puerto Rico Court of Appeals reversing the new trial disposition in 2017, and (6) Meléndez's subsequent *habeas corpus* petition in 2020. <u>See</u> Docket No. 47 at pp. 7-10.

The Puerto Rico Court of Appeals issued the intervening judgment in this case when it reversed the Court of First Instance's new trial disposition. _Cruz_, 2019 WL 2232528, at *33; _cf_ _Smith v. Williams_, 871 F.3d 684, 688 (9th Cir. 2017) (applying _Magwood_ to determine if an intervening judgment reset the AEDPA statute of limitations clock, holding that "it is of no moment that the Second Amended Judgment reinstated counts on which Smith had originally been convicted rather than adding new counts of conviction"). By granting Meléndez's Rule 192.1 motion, the Court of First Instance vacated and set aside the 1992 judgment. _See_ P.R. Laws Ann. Tit. 34, App. II, R. 192.1 (authorizing "[any] person who is imprisoned by virtue of a **judgment** rendered by any Division of the Court of First Instance who alleges the right to be release" to request "in the part of the court which imposed sentence to vacate, set side, or correct the **judgment**") (emphasis added). For ten months, Meléndez resumed his life as a free citizen in Puerto Rico. On March 13, 2019, the Puerto Rico Court of Appeals then ordered that Meléndez and Ramos be "remanded to the appropriate penal institution," rejecting the legal rationale adopted by the Court of First Instance and setting forth an amended judgment. _Id.; see_ _United States v. Buenrostro_, 895 F.3d 1160, 1165 (9th Cir. 2018) ("[To] create a new judgment, a change to a

sentence must be accompanied by the legal invalidation of the prior judgment.").

Like the reimposition of the death penalty in Magwood, the Puerto Rico Court of Appeals' reinstatement of the three consecutive life sentences in this case constitutes a judgment subject to *habeas corpus* review. See Johnson v. United States, 623 F.3d 41, 46 (2d Cir. 2010) (holding that "where the first petition results in an amended judgment, a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both."); In re Norris, Case No. 22-5298, 2023 U.S. App. LEXIS 3653, at *1-3 (6th Cir. Feb. 15, 2023) (holding that section 2244 was inapplicable because a "reimposed sentence [was] a new judgment" when the "district court resentenced Norris to time served." The Sixth Circuit Court of Appeals reversed the district court, and district court "entered a second amended judgment reimposing Norris' original sentence"). Courts concur that when a prisoner "receives the same punishment as in their original sentence, the prisoner nonetheless has a 'new' judgment" within the meaning section 2244. Patrick Cothern, What is "New"?: Defining "New Judgment" after Magwood, 117 Mich. L. Rev. 1669, 1679 (2019) (citing cases). Accordingly, sections 2244(b) and (c) are inapplicable.

Because his 2020 *habeas corpus* petition is not a "second or successive" application, Meléndez need not obtain authorization from the First Circuit Court of Appeals to pursue relief pursuant to section 2254.  See Lesko v. Sec'y Pa. Dep't of Corr., 34 F.4th 211, 223 (3rd Cir. 2022) ("Since Magwood was decided, five Circuits have held that the Magwood rule applies with equal force to cases like this one, concluding that a second-in-time petition is not a second or successive as to an undisturbed conviction because a new sentence creates a new judgment which has not yet been challenged.") (citing cases).

**B.    Panetti v. Quaterman: The Ripeness Exclusion**

The respondent's reply brief cites Boyd v. Sec'y, asserting that "once a district court has entered its final judgment on the merits in a habeas case, a new filing by the same prisoner seeking federal habeas corpus relief from the same state conviction is almost always properly considered a second or successive habeas petition, no matter what the prisoner calls it." Docket No. 63 at p. 8 (quoting Boyd v Sec'y, 114 F.4th 1232, 1236 (11th Cir. 2024)).  By employing the phrase "almost always," the Boyd court recognized that this general principle is not a categorical imperative.  It explicitly referred to the ripeness exception set forth in Panetti v. Quaterman.  Id. at n. 1 (citing 551 U.S. 930).

In *Panetti*, the Supreme Court held that sections 2244(b) and (c) are inapplicable to causes of action "brought in an application filed when the claim is first ripe." 551 U.S. 930, 947 (2007). The petitioner in *Panetti* filed a *habeas corpus* application in 2001, arguing that he lacked the mental capacity to stand trial in a death-penalty eligible case. Id. at 937. The district court denied this application. Id. After the state of Texas set the execution date, the petitioner filed a second *habeas corpus* application. Id. at 938. In this second *habeas corpus* application, the petitioner cited Ford v. Wainwright, 477 U.S. 399 (1986), authoritative precedent precluding states "from carrying out a sentence of death upon a prisoner who is insane." Id. at 934. The district court denied the petitioner's second *habeas corpus* application. Id. at 941. On appeal, the Supreme Court first determined whether sections 2244(b) and (c) applied to the petitioner's second *habeas corpus* petition. Id. at 942.

The Panetti court held that "Congress did not intend the provisions of AEDPA [. . .] to govern a filing in the unusual posture presented here: a § 2254 application raising a Ford-based incompetency claim filed as soon as that claim was ripe." Id. at 945. Consequently, "[the] statutory bar on second or successive applications" did not apply, allowing the Supreme Court to address the merits of petitioner's appeal.

In their reply brief, the respondents attempt to confine
Panetti to cases involving incompetency claims. (Docket No. 63 at
p. 8.) Courts from sister jurisdictions have, however, extended
the ripeness exclusion espoused in Panetti beyond claims of
incompetency. See United States v. Buenrostro, 638 F.3d 720, 725
(9th Cir. 2011) ("A prisoner whose conviction and sentence were
tested long ago may still file petitions relating to denial of
parole, revocation of a suspended sentence, and the like because
such claims were not ripe for adjudication at the conclusion of
the prisoner's first federal proceeding.") (citing cases).

The Sixth Circuit Court of Appeals decision in In re
Apanovitch, Case No. 23-3149, 2024 U.S. App. LEXIS 9838 (6th Cir.
Apr. 23, 2024), is illustrative. In 1984, an Ohio trial court
sentenced the petitioner to death for the rape and murder of Mary
Anne Flynn. 2024 U.S. App. LEXIS 9838, at *1. At trial, the state
presented "scant physical evidence." Id. The petitioner filed
his first habeas corpus application in 1991, which was denied.
Id. In 2008, the prosecution informed the petitioner that it
possessed previously non-disclosed evidence, including swabs from
the victim's vagina. Id. at *7. The petitioner moved for a new
trial before the trial court, presenting a report from a molecular
biologist "stating that the newly-discovered vaginal swab tests
contained sperm from at least three different contributors – none

of which were [the petitioner]." Id. The trial court granted the petitioner a new trial. Id. The Ohio Supreme Court reversed the new trial disposition, however, placing the petitioner back on death row. Id. at *9. Subsequently, the petitioner filed a second *habeas corpus* petition, contending *inter alia* that the DNA results from the vaginal swab exonerated him. Id. at *10.

The Sixth Circuit Court of Appeals analyzed whether sections 2244(b) and (c) prohibited review of the petitioner's second *habeas corpus* application. Id. at *11. It reiterated the holding in Panetti, stating that "a numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." Id. (quoting In re Jones, 652 F.3d 603, 605 (6th Cir. 2010)). Because the new evidence cited in the petitioner's second *habeas corpus* application "was not presented at his trial," there "simply was no way [he] could have made his current *habeas corpus* claims in 1991 – shy of predicting the future." Id. at *13. Consequently, the Sixth Circuit Court of Appeals held that the second *habeas corpus* petition was "not subject to § 2244(b)'s gatekeeping function." Id. at *14.

Meléndez's 2020 *habeas corpus* petition before this Court does not constitute a second or successive application for the same reasons articulated by Sixth Circuit Court of Appeals in In

re Apanovitch.   The new evidence serving as a predicate for the 2020 *habeas corpus* application did not emerge until 2016, when the Institute of Forensic Science conducted the mtDNA analysis. (Docket No. 47 at p. 5.)   Accordingly, the claims set forth in the 2020 *habeas corpus* application were not ripe for adjudication when Meléndez filed his first *habeas corpus* application in 2003.   Only the oracle at Dephi could have predicted that the mtDNA analysis would exclude Meléndez and Ramos as potential donors.   Restucci v. Bender, 599 F.3d 8, 10 (1st Cir. 2010) ("[Since] Restucci's current claims [alleging the wrongful denial of parole] arose well after his prior *habeas* petitions and application for leave to file a second or successive petition seeking review of his state court conviction were denied, he could not have raised them in the earlier petitions; we therefore conclude, and the State agrees, that the claims are not 'successive' for purposes of § 2244(b)."); Brown, 76 F.4th at 873 ("Because Brown's due process, equal protection, and ineffective assistance of counsel claims were not ripe when his first federal *habeas* petition was denied by the district court or when his second *habeas* petition was dismissed by the district court, Brown could not have raised these claims in his first or second petition so his failure to do so is not an abuse of writ.   Therefore, the third and fourth habeas petitions were not second or successive writs under 28 U.S.C. § 2244(b).").

Consequently, Meléndez's 2020 *habeas corpus* petition is not a "second or succession" application within the meaning of section 2244.

The respondents cite Gautier v. Wall, 620 F.3d 58, 59 (1st Cir. 2010) (*per curiam*), in support of dismissal. Id. at p. 6. Gautier is inapposite, however, because the petitioner in that case "could have filed one *habeas* petition raising all of his claims after exhausting the remedies available in the courts of the State." Id. at 59. The First Circuit Court of Appeals held that section 2244 prohibited the petitioner from filing second petition because it merely set forth previously adjudicated claims and attacked the same judgment as the first *habeas corpus* petition. Id. at 50. In contrast, Meléndez is challenging an intervening judgment. He asserts claims based on new evidence that were not ripe at the time of his first *habeas corpus* application. Accordingly, this precedent cited by the respondents is unpersuasive.

## IV. Conclusion

For the reasons set forth above, the respondent's motion to dismiss is **DENIED**. (Docket No. 51.)

On August 9, 2024, the Court ordered the respondents to file the "documents of the Commonwealth Courts which have already been filed in Civil No. 20-1589," along with their translations, no

later than August 22, 2024.  (Docket No. 50.)  The respondents
have not complied with this order.  Accordingly, the respondents
**SHALL** file the Commonwealth Courts' 1992 trial transcripts, post-
conviction pleadings, appellate dispositions, and Rule 192.1
transcripts **no later than November 4, 2024.**

The respondent **SHALL** file an answer to the second amended
petition **no later than November 4, 2024.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 28, 2024.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE