**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JUAN CARLOS MELÉNDEZ-SERRANO,** | **CIVIL NO. 20-1588 (FAB)** |
| *Petitioner,* | |
| v. | |
| **VÍCTOR MALDONADO,** *et al.* | |
| *Respondents.* | |

**ANSWER TO SECOND AMENDED PETITION**

**TO THE HONORABLE COURT:**

 **COMES NOW**, the Department of Justice of the Commonwealth of Puerto Rico, through the undersigned attorney, on behalf of Ana Escobar Pabón, Domingo Emanuelli-Hernández and Víctor Maldonado ("Respondents"), in their official capacities, and very respectfully **STATES, AVERS** and **PRAYS** as follows:

**GENERAL ALLEGATIONS**

 All conclusions of law and jurisdiction contained in the *Second Amended Petition for Relief from a Conviction or Sentence by a Person in State Custody* (Docket No. 47; "Second Amended Petition") filed by Juan Carlos Meléndez-Serrano ("Meléndez-Serrano" or "Petitioner") are disputed insofar as applicable to the factual allegations herein. All factual allegations contained in the Second Amended Petition, except those specifically admitted below, and only as qualified herein, are hereby denied. Appearing Respondents reserve the right to amend the answers and affirmative defenses set forth as deemed necessary.

1.     As to Averment 1, it is admitted that following an investigation, Meléndez-Serrano was convicted in 1992 of three murders and of weapons law violation, as was his co-defendant Antonio Ramos Cruz. It is denied that Petitioner did not commit the murders. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the Petitioner. As to footnote 1, it is admitted that Mr. Ramos Cruz has also filed for similar relief from this Court, under Case No. 20-cv-1589 (FAB).

2.     Averment 2 does not require a responsive pleading from the appearing Respondents since it is the Petitioner's prayer to the Court.

3.     Averment 3 is denied.

## Introduction[1]

4.     As to Averment 4, the first and second sentences are admitted. The third sentence is also admitted except as to the description of the type of publicity the case received.

5.     Averment 5 is denied as containing interpretations, conclusions and/or opinions of the Petitioner.

6.     As to Averment 6, and footnote 2 of the averment, it is admitted that the case was reassigned to prosecutor Andrés Rodríguez Elías, and that he prosecuted José Luis Latorre and the case of Caro Pérez, Ruiz Colón, and Ortiz Álvarez in the 1980s and 1990s. As to footnote 3, the statements made by the state prosecutor are admitted. The prosecutor, in his closing argument, also made reference to the existence of pictures that were worth more than a thousand words. The rest of the paragraph, including the rest

---

[1] All titles and Subtitles are included as they appear in the Second Amended Complaint for the convenience of the Court. Their inclusion *verbatim* does not constitute an admission on the veracity of the contents of either the Titles or Subtitles.

footnote 2, is denied as it contains interpretations, conclusions, and opinions of the Petitioner.

7.    As to Averment 7, it is admitted that Prosecutor Rodríguez-Elías presented the testimonies of siblings Bárbara ("Babi") and José ("Joito") Martínez-Maldonado as part of the case in chief during the jury trial. The prosecution also presented multiple other testimonies at trial, which included the testimonies of an IFS Forensic Pathologist, and the IFS Forensic Medical Technician, police officers, among multiple others. The rest of the paragraph is denied as it contains interpretations, conclusions, and opinions of the Petitioner.

8.    As to Averment 8, it is admitted that Sergeant Gerardo Román was investigating the case, focused on Eduardo Morales-Colberg and Juan Manuel Pagán García. It is also admitted that the neighbors reported that Morales-Colberg had been stalking Maymí, that he was jealous, and that he would question Maymí when she would go out.  It is denied as to Maymi's husband taking the separation badly, as he testified to the contrary. It is also denied that Morales-Colberg fought physically with CIC investigator Pablo Quiñones-Laboy when he was interviewed about Maymí's death as unsupported by the transcript page cited.[2]

9.    As to Averment 9, it is admitted that witnesses testified that Maymí had a sexual relationship with Juanma and that they worked together. It is also admitted that Maymí and her husband were estranged.  It is also admitted that witnesses testified that Juanma's alibi was not explored. The rest of the paragraph is denied as it contains interpretations, conclusions, and opinions of the petitioner.

---

[2] **Exhibit 2,** 1992 Jury Trial transcript, p. 328.

10.    As to Averment 10, it is admitted that at trial, many of the deceased's neighbors testified, and that the jury was presented with the testimony of the teenage siblings' (Babi and Joito) account of the events, who they believed. It is admitted that prosecutor Rodríguez Elías used Bible quotes in his closing argument. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the petitioner.

11.    As to Averment 11, it is admitted that the jury heard of hairs atop the victims.[3] It is also admitted that the jury never learned the origin of hair found atop Maymi's underwear, which she had worn on a shaved pubic area. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the petitioner.

12.    As to Averment 12, it is admitted that in 2016, Mr. Ramos-Cruz and Mr. Meléndez-Serrano sued to obtain DNA testing of the hairs found atop Maymi's underwear. The second sentence is denied for lack of knowledge that the analysis of the hairs found on those panties, that could not be evaluated in 1992, in 1996 could be subjected to a detailed mitochondrial DNA analysis. The last sentence is admitted. Footnote 6 is denied as it contains interpretations, conclusions and/or the opinion of the Petitioner.

13.    As to Averment 13, it is admitted that, after obtaining the mitochondrial DNA evidence, the Court of First Instance ("CFI" or "Superior Court") granted Mr. Meléndez-Serrano's motion for new trial.  It is also admitted that after the new trial was granted, Mr. Meléndez-Serrano — an inmate who already could return home several times per year on two-day passes — was released on bail for two years to live at home full time with his

---

[3] Averment number 46, was admitted as to human hairs being recovered on Maymí's panties among other places as **Exhibit 3**, page 695, of the trial transcript cited by the Petitioner supports it.

family, where he worked. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the petitioner.

14.     As to Averment 14, it is admitted that the state appealed the decision, that the Puerto Rico Court of Appeals ("PRCOA") reversed the CFI determination, and the Puerto Rico Supreme Court ("PRSC"") confirmed the appellate forum without written opinion. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the petitioner. The footnote 7 does not require a responsive pleading by Respondents.

15.     As to Averment 15, the prayer for relief made by the petitioner does not require a responsible pleading by the appearing Respondents, but in the event that it does, it is denied. The rest of the paragraph is denied as it contains interpretations, conclusions and/or the opinion of the petitioner.

16.     As to Averment 16, the prayer for relief made by the petitioner does not require a responsive pleading by the appearing respondents, but in the event that it does, it is denied. The rest of the paragraph is denied as it contains conclusions and/or the opinion of the petitioner.

**The Parties**

17.     Averment 17 is admitted.

18.     Averment 18 is admitted.

19.     Averment 19 is admitted.

20.     Averment 20 is admitted.

**I.     Procedural Background of Conviction, Appeal and Post-Conviction Motions**

**A. Conviction Information**

21.     Averment 21 is admitted. The information contained in the table is admitted.

**B.  Direct Appeal Information Motions Filed After Direct Appeal**

22.     Averment 22 is admitted. The information contained in the table is admitted.

**C.  Motions Filed After Direct Appeal**

    **1.First Motion for New Trial**

23.     Averment 23 is admitted.

24.     Averment 24 is admitted, including the information contained in the table.

    **2.Motion for Mitochondrial DNA Analysis Second**

25.     Averment 25 is admitted, including the footnote.

    **3.Second Motion  for New Trail under Puerto Rico Crim. Proc. Rule 192**

26.     As to Averment 26, it is admitted that the Petitioner filed a second request for new trial based on the results of the mtDNA testing, and that the CFI granted it. The information contained in the table is admitted. The footnote does not require a responsive pleading from Respondents.

**D.  Puerto Rico Appellate Court Decision**

27.     As to Averment 27, it is admitted that the state appealed the CFI determination, that the PRCOA reversed it, and that there was a dissenting opinion. The information contained in the table is admitted.

**E.  Request for Certiorari to the Supreme Court of the Commonwealth of Puerto Rico**

28.     As to Averment 28, it is admitted that the Supreme Court denied Mr. Meléndez-Serrano's petition for certiorari and the two subsequent petitions for reconsideration. The rest of the averment is denied as it contains conclusions and

interpretations by the Petitioner. The information contained in the table is admitted. The Investigation and the Death of Haydeé Maymí Rodríguez and Her Two children in the "Massacre of Trujillo Alto"'

## II.    A More Detailed Factual and Procedural Background[4]

### A. The Investigation and the Death of Haydeé Maymí Rodríguez and Her Two children in the "Massacre of Trujillo Alto"'

29.    Averment 29 is admitted.

30.    Averment 30 is admitted. Babi also admitted that she did not tell reporters what she knew about the case, that she lied to the reporters since she didn't tell them what she knew about the case.[5]

31.    Averment 31 is admitted.

32.    As to Averment 32, it is admitted that police and forensic personnel responded to the scene, taking pictures, and examining the scene. It is also admitted that witnesses testified that the press had access to the scene while the investigation was taking place. Furthermore, it is admitted that Maymí's relatives went to the scene, after receiving a call from "Sanitation" requiring them to open the house so they could fumigate it. When they arrived at the house and opened it, the personnel from "Sanitation" stated that they wouldn't fumigate until the house was clean, so Maymí's relatives called the CIC of Carolina, who indicated that they were done with the house and that they could clean it. Maymí's relatives burned the mattress and cleaned the house with water. After they were done cleaning, Sanitation proceeded to fumigate the house. After the house was

---

[4] Respondents clarify that the first 216 pages of the trial transcript contain the testimonies of the witnesses on a Rule 9 proceeding, which dealt only with the admissibility of pieces of evidence. These testimonies were given exclusively to the judge, without the presence of the jury. **Exhibits 1 - 2,** trial transcript index.
[5] **Exhibit 6,** trial transcript, p. 5009.

fumigated, Maymí's relatives closed it and left. [6] The rest of the averment is denied as it contains interpretations, conclusions and/or the opinion of the Petitioner.

**B. Family members "cleaned up" the crime scene, carrying away and burning evidence.**

33.     As to Averment 33, it is admitted that Maymí's relatives, including her cousin Nydia Magalie Agosto Rodríguez, went to the scene, after receiving a call from "Sanitation" requiring them to open the house so they could fumigate it. When they arrived at the house and opened it, the personnel from "Sanitation" stated that they wouldn't fumigate until the house was clean, so Maymí's relatives called the CIC of Carolina, who indicated that they were done with the house and that they could clean it. Maymí's relatives burned the mattress and cleaned the house with water. After they were done cleaning, Sanitation proceeded to fumigate the house. After the house was fumigated, Maymí's relatives closed it and left.[7] Moreover, the investigating prosecutor, Carlos Beltrán testified that he ordered the sheets to be preserved for blood analysis, but he did not order the preservation of the mattress.[8]

34.     Averment 34 is admitted as to the first two sentences. As to the third sentence, it is denied since Nydia did not refer to the knife as the murder weapon.

**C. The murder weapon was found in Morales-Colberg's possession.**

35.     Averment 35 is admitted as to Nydia giving much of the belongings to Morales-Colberg and not recalling cleaning or seeing the knife that was found in the belongings Morales-Colberg received. At no point she referred to this knife as the murder weapon. The last sentence of the averment is admitted.

---

[6] **Exhibit 2,** trial transcript, pp. 299-305.
[7] Id.
[8] **Exhibit 3,** trial transcript, p. 534.

**D. The only fingerprints found at the scene belonged to Morales-Colberg, but a swarm of agents in an unsecured scene destroyed the prospect of dusting for prints.**

36.    Averment 36 is admitted.

37.    Averment 37 is admitted.

**E. Knives were identified by crime-scene investigators in Maymi's kitchen but were not dusted for prints or retained by law enforcement.**

38.    Averment 38 is admitted as to the first two sentences. The third sentence is denied, as unsupported by the transcript page cited.[9] The fourth sentence is also admitted.

**F. Other pertinent pieces of evidence were spotted at the crime scene but were never recovered or preserved.**

39.    Averment 39 is admitted as to its first six sentences. The seventh sentence is denied as stated, being that the witness testified that the mattress had three large blood stains. The eighth sentence is admitted. Moreover, the investigating prosecutor, Carlos Beltrán testified that he ordered the sheets to be preserved for blood analysis, but he did not order the preservation of the mattress.[10]

40.    Averment 40 is admitted.

41.    Averment 41 is admitted.

42.    Averment 42 is admitted.

43.    Averment 43 is admitted.

**G. Maymi's body was found in a bathtub mostly dressed but with her pants unbuttoned.**

44.    Averment 44 is admitted.

---

[9] **Exhibit 3,** trial transcript, p. 608.
[10] **Exhibit 3,** trial transcript, p. 534.

**H. A forensic examination of Maymí revealed no signs of bruising to Maymí, but forensics personnel discovered three hairs of unknown origin atop her panties.**

45.     Averment 45 is admitted.

46.     As to Averment 46, it is admitted that Human hairs were found on Ms. Maymí's panties among other places. Tr. 695. The rest of the averment is denied as it contains interpretations, conclusions and/or the opinion of the Petitioner.

**I. The law enforcement investigation initially focused on Morales-Colberg and Maymi's paramour, Juanma, before a new group of investigators took over months into the investigation.**

47.     Averment 47 is admitted as to the first two sentences. The third sentence is denied as stated. Officer Pablo Quiñones Laboy testified that at the beginning, Román's investigation pointed to Morales Colberg as a suspect, but made no mention of a murder weapon.[11] The rest of the averment is admitted.

48.     Averment 48 is admitted as to its first two sentences. The third sentence is denied as stated since the testimony was that Juanma had sex with Maymí at her house in Cupey; no mention was made to the house in Trujillo Alto.[12] The rest of the averment ins admitted.

49.     Averment 49 is denied as it contains conclusions and/or the opinion of the Petitioner.

50.     Averment 50 is admitted as to Babi testifying that she was interviewed on two occasions with policemen, and one with Prosecutor Rodríguez Elías. She did not mention being interviewed on "numerous occasions" as the averment mentions. The

---

[11] **Exhibit 4,** trial transcript, p. 727.
[12] **Exhibit 4,** trial transcript, p. 868.

second sentence of the averment is denied. Babi testified that she was interviewed by the investigating agents, not prosecutors.[13] The third sentence is admitted as to Babi changing her version of the facts on December 14, 1990, the rest of the sentence is denied as unsupported by the transcript page cited.[14] The fourth sentence is denied as stated. There is no reference in the transcript pages cited as to Babi being picked up "before school". Further, she was interrogated from 11:00 a.m. to 10:00 p.m., not "all morning" and "all evening" as averred.[15] The last sentence of the averment is denied as unsupported by the transcript page cited.[16]

51.    Averment 51 is admitted as to Joíto being seventeen years old and Babi being fifteen years old at the time of the murders. The first sentence of the averment is denied as unsupported by the transcript pages cited.[17] The last sentence is denied. The witness testified that he was interviewed from 3:00 p.m. until 1:30 a.m.[18]

52.    Averment 52 is admitted.

53.    Averment 53 is denied as stated. Agent Pablo Quiñones Laboy testified that Morales-Colberg's mother handed him a knife that had a hair and what appeared to be blood on it. Quiñones Laboy did not testify that said knife was the "murder weapon." Moreover, Quiñones Laboy testified that he sent the knife to be analyzed to verify whether it was related with the deaths and if it was compatible with the victims' wounds. Nonetheless, he did not testify as to the results of the tests regarding the knife's compatibility with the wounds. He only testified that the labs results confirmed that the

---

[13] **Exhibit 7,** trial transcript, pp. 5012-13.
[14] **Exhibit 7,** trial transcript, p. 5017.
[15] **Exhibit 7,** trial transcript, pp. 5018-19.
[16] **Exhibit 7.**
[17] **Exhibit 6,** trial transcript, pp. 3039-41.
[18] **Exhibit 6,** trial transcript, pp. 3079-3087.

hair found on the knife were compatible with Maymí's.[19] The last two sentences of the averment are admitted.

**J. The 1992 Trial: Witnesses claimed Mr. Meléndez-Serrano was at Maymí's home with co-defendant Meléndez-Serrano the night she was murdered.**

54.    Averment 54 is admitted. It is clarified that pursuant to Joíto's testimony, he left at around 10:00 p.m. to watch the game at 10:30 p.m. and spent more than two hours watching it.

55.    Averment 55 is admitted.

56.    Averment 56 is admitted.

57.    Averment 57 is admitted.

58.    Averment 58 is admitted.

59.    Averment 59 is admitted.

60.    The first sentence is admitted as to Babi claiming that Mr. Meléndez told Babi to go inside Ms. Maymí's house and get her keys so he would have an excuse to talk to Ms. Maymí.[20]   The second sentence is denied as to the reference to Morales-Colberg still being inside as it is unsupported by the transcript page cited.[21] The remainder of the second sentence is admitted. The third sentence is denied as Babi stated that she did not see him as she left the house.[22] The last sentence is admitted.

61.    Averment 61 is admitted.

62.    Averment 62 is admitted.

63.    Averment 63 is admitted.

---

[19] **Exhibit 4,** trial transcript, pp. 723-25.
[20] **Exhibit 6,** trial transcript, pp. 4086-87.
[21] Id.
[22] **Exhibit 7,** trial transcript, p. 5065.

64.     Averment 64 is admitted.

65.     Averment 65: The first sentence is denied as it contains characterizations by the Petitioner. The rest of the averment is admitted.

66.     Averment 66 is admitted.

67.     Averment 67 is admitted.

68.     Averment 68 is denied as to its first sentence. The witness testified that he interviewed Bárbara Martínez Maldonado (Babi) on two occasions. There is no mention of Joíto in the transcript pages cited.[23] As to the rest of the averment, it is admitted that the witness testified that in trial.

69.     Averment 69 is admitted.

**K. The 1992 Trial: No physical evidence linked Mr. Meléndez-Serrano or Meléndez to a crime scene rife with biological evidence.**

70.     Averment 70 is denied as it contains conclusions and/or opinions of the Petitioner.

71.     Averment 71 is admitted as to its first three sentences. Nonetheless, the third sentence is not contained in PRCOA 15, as the Petitioner cited.[24] The last sentence is denied as it contains conclusions and/or opinions of the petitioner. Moreover, the witness testified that the evidence was received on March 21, 1991, and that she did not know its precedence.[25]

72.     Averment 72: It is admitted that the CFI decision contained the statements averred in the first sentence. The second sentence is admitted.

---

[23] **Exhibit 4,** trial transcript, pp. 894-95.
[24] **Exhibit 12**, PRCOA March 13, 2019 Judgment, p. 15 (Dkt. No. 52-1 in *Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589).
[25] **Exhibit 6,** trial transcript, p. 2080.

73.     Averment 73 is denied as it is unclear who the Petitioner refers as "they".

**L. The 1992 Trial: Mr. Ramos-Cruz's aunt testified that he was at home sleeping on the night of the murders.**

74.     Averment 74 is admitted as to Mr. Ramos-Cruz living with his aunt and uncle but denied as to him working with his uncle at Suiza Dairy as his aunt denied it.[26] As to the rest of the averment, it is admitted that was Mr. Ramos's aunt testimony.

**M. The 1992 Trial: The prosecution closing recognized failings in the state's investigation but invoked religious imagery of Jesus Christ protecting children and encouraged the jury that God was on the side of the prosecution.**

75.     Averment 75: The first sentence is denied as the transcript made no reference to a "murder weapon". The second sentence is denied as the transcript page cited does not mention Mr. Ramos and Meléndez returning to clean up the blood. As to the third sentence, it is admitted that CFI 18-19 contains said statement. The last sentence is admitted.

76.     Averment 76 is denied as the transcript does not reflect Petitioner's interpretation.

77.     Averment 77 is denied as it contains characterizations by the Petitioner.

78.     Averment 78 is denied as it contains characterizations by the Petitioner.

79.     Averment 79 is admitted.

**N. What the Jury Never Heard: The hairs found atop Maymí's underwear matched mitochondrial DNA from Maymí's matrilineal line.**

80.     Averment 80 is admitted as to the jury hearing no testimony as to whom the hairs belonged to; that in 1992 mtDNA was not available, but it was available by 2012 in

---

[26] **Exhibit 8.**

the United States; that Meléndez-Serrano was not a donor of the hairs recovered; and that the test linked to Maymí's matrilineal line, including Maymí herself as a donor. The rest of the averment is denied as conclusory and speculative.

**O. What the Jury Never Heard: Zero percent of the crime scene evidence had a link to Mr. Meléndez-Serrano.**

81.    Averment 81 is denied as it contains conclusions and/or opinions of the petitioner.

82.    Averment 82 is admitted as to the 2016 testing proving that Mr. Meléndez-Serrano is not the donor of the hairs. The rest of the averment is denied as it contains interpretations, conclusions and/or opinions of the petitioner.

**P. Post-Conviction Relief: Mr. Meléndez-Serrano first sought a new trial based on microscopic analysis of crime-scene hairs.**

83.    Averment 83 is admitted.

84.    Averment 84 is admitted.

**Q. Post-Conviction Relief: Mr. Meléndez-Serrano sought and obtained a new trial based on newly discovered mitochondrial DNA evidence revealing that he was not a contributor to the panty hairs and the contributor was in Maymí's matrilineal line.**

85.    Averment 85 is admitted.

86.    Averment 86 is denied as it contains interpretations, conclusions and/or opinions of the petitioner.

**R. Post-Conviction Relief: Court of Appeals Decision**

87.    Averment 87 is admitted as to the PRCOA reversing the CFI determination of granting a new trial. The rest of the averment is denied as it contains interpretations, conclusions and/or opinions of the petitioner.

88.    Averment 88 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**S. Post-Conviction Relief: Certiorari**

89.    Averment 89 is admitted.

**III.    Grounds for Relief**

### CLAIM 1.

90.    Averment 90 does not require a responsive pleading from Respondents as it contains a matter of law.

91.    Averment 91 does not require a responsive pleading from Respondents as it contains a matter of law.

92.    Averment 92 is denied.

93.    Averment 93 is denied.

**A. The PR Supreme Court decision to affirm revocation of the CFI's new trial decision involved an unreasonable application of clearly established Federal law, because the new mtDNA evidence would have resulted in a different result at trial and the state court standard demanded a far higher level of proof at the motion phase.**

94.    Averment 94 does not require a responsive pleading from Respondents as it contains a matter of law.

95.    Averment 95 is denied.

96.    Averment 96 is denied.

97.    Averment 97 does not require a responsive pleading from Respondents as it contains a matter of law.

98.    Averment 98 does not require a responsive pleading from Respondents as it contains a matter of law.

99.    Averment 99 does not require a responsive pleading from Respondents as it contains a matter of law.

100.    Averment 100 does not require a responsive pleading from Respondents as it contains a matter of law.

101.    Averment 101 does not require a responsive pleading from Respondents as it contains a matter of law.

102.    Averment 102 does not require a responsive pleading from Respondents as it contains a matter of law.

**i.    Under the correct federal standard, the CFI properly granted Mr. Meléndez-Serrano a new trial.**

103.    Averment 103 is denied as it contains interpretations, conclusions and/or opinions of the Petitioner.

**a.    The state court accepted that the new evidence was not previously discoverable, was credible, and was not merely cumulative.**

104.    Averment 104 is admitted.

105.    Averment 105 is admitted as to its first sentence. The second sentence is denied.

106.    Averment 106 is denied as containing interpretations, conclusions and/or opinions of the Petitioner.

107.    Averment 107 denied as it contains characterizations by the Petitioner. Furthermore, the COA established that the microscopic hair analysis performed by 2012 also excluded Mr. Meléndez-Serrano as a donor of the hairs. A fact known to Mr. Meléndez-Serrano since 2012.

108.   Averment 108 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

   **b. The COA was wrong to conclude the new mitochondrial DNA evidence was not likely to change the result at trial.**

109.   Averment 109 is admitted as to the CFI opinion containing the statements cited. The rest of the averment is denied as containing interpretations, conclusions and/or opinions of the petitioner.

110.   Averment 110 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

111.   Averment 111 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

112.   Averment 112 is denied.

**ii. The Mitochondrial DNA report proved no link between Mr. Ramos and Meléndez and a crime scene rife with biological tissue and signs of struggle.**

113.   Averment 113 is admitted.

114.   Averment 114 is admitted.

115.   Averment 115 is denied as to the first sentence. CFI 4 clearly states that Maymí had a totally shaven pubic area, and that she had no panty nor brassier on.[27] The second sentence is admitted.

**iii. The Mitochondrial DNA studies of pubic hairs and the condition of Maymí at the time of the autopsy are newly discovered exculpatory evidence.**

---

[27] **Exhibit 13,** Resolution of the Court of First Instance (CFI), p. 4.

116.    Averment 116 is admitted as to the pathologist not testifying, but she was made available to the defense who decided not to call her as a witness.[28] The rest of the averment is admitted.

117.    Averment 117 is admitted as to its first sentence. The rest of the averment is denied as containing interpretations, conclusions, characterizations and/or opinions of the petitioner.

### iv. Mitochondrial DNA results exclude Mr. Ramos and Meléndez and point to a narrow range of the possible suspects.

118.    Averment 118 is admitted.

119.    Averment 119 is admitted.

120.    Averment 120 is admitted as to the PRCOA making those statements in its Opinion. It is admitted that the victims' bodies were exhumed to retrieve hairs for comparison. The rest of the averment is denied as containing interpretations, conclusions and/or opinions of the petitioner.

121.    Averment 121 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

122.    Averment 122 is admitted that it was the witness' testimony. The first sentence is admitted.

123.    Averment 123 is admitted as to a knife found in possession of Morales-Colberg and Carmen Rosa Colberg was analyzed forensically and found to be consistent with the wounds to Maymí and her children, and that Morales consulted a lawyer before the knife was turned over to investigators. The rest of the averment is denied as

---

[28] **Exhibit 12,** PRCOA March 13, 2019 Judgment, p. 14 (Dkt. No. 52-1 in *Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589).

containing interpretations, conclusions, characterizations and/or opinions of the petitioner.

124.    Averment 124 is denied as to its first sentence for containing interpretations, conclusions and/or opinions of the petitioner. The last two sentences are admitted.

125.    Averment 125 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**v. the new evidence casts serious doubts on the prosecution's theory that a motive to rape motivated the killing.**

126.    Averment 126 is admitted.

127.    Averment 127 is admitted as to its first three sentences. The rest of the averment is denied as containing interpretations, conclusions and/or opinions of the petitioner.

128.    Averment 128 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

129.    Averment 129 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

130.    Averment 130 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

131.    Averment 131 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

132.    Averment 132 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**B. The state court unreasonably required the new evidence to undermine all other evidence in the trial and establish conclusive proof of innocence at the motion stages.**

133.    Averment 133 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

134.    Averment 134 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

135.    Averment 135 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**C. The state court unreasonably applied an unintelligible standard of materiality to revoke Mr. Meléndez-Serrano's grant of a new trial.**

136.    Averment 136 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

137.    Averment 137 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

138.    Averment 138 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

139.    Averment 139 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**CLAIM 2.**

140.    Averment 140 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**A. The COA erroneously held the probative value of microscopic hair analysis is no different that mtDNA analysis.**

**i. Definition of Hair Analysis**

141.    Averment 141 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

**ii. Definition of Mitochondrial DNA Analysis**

142.    Averment 142 is admitted as stated in the COA opinion.

143.    There is no Averment 143 in the Second Amende Petition.

**iii. The state court's conclusion that microscopic hair analysis was no different that mtDNA testing for exclusion purposes was an unreasonable factual determination.**

144.    Averment 144 is denied as containing interpretations, conclusions and/or opinions of the petitioner.

## CLAIM 3.

145.    Averment 145 does not require a responsive pleading from Respondents as it contains a matter of law, but in the event that it does, it is denied.

146.    Averment 146 does not require a responsive pleading from Respondents as it contains a matter of law, but in the event that it does, it is denied.

147.    Averment 147 does not require a responsive pleading from Respondents as it contains a matter of law, but in the event that it does, it is denied.

148.    Averment 148 does not require a responsive pleading from Respondents as it contains a matter of law, but in the event that it does, it is denied.

## PRAYER FOR RELIEF

149.    All statements raised in the Prayer for Relief as to any unconstitutional confinement and restraint, and the violation of Petitioner's rights, are denied.

Petitioner's request for its conviction and sentence to be vacated, and, consequently, that he be discharged from his "unconstitutional confinement and restraint"

is not warranted pursuant to the evidence in the case against him, as analyzed by the State Courts; the instant case is time barred, not available for the applicability of equitable relief for lack of diligence by the petitioner and his attorney in state court; and for the inapplicability of the actual innocence defense for the petitioner.

## AFFIRMATIVE DEFENSES

1.      The Petitioner has failed to rebut the presumption of correctness of the state court with clear and convincing evidence. "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court, a determination of a factual issue made by a State Court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." (Emphasis added); *see* Section 2254(e)(1) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. 22 seq.

2.      "[F]ederal courts sitting in habeas [corpus] are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398, 1401, 179 L.Ed.2d 557 (2011) (internal quotation marks and citations omitted).

3.      The Petition is time barred pursuant to the statute of limitations established in AEDPA, 28 U.S.C. §§ 2244(d)(1)(A) and (D).

4.      Equitable tolling is inapplicable to the instant case since the Petitioner failed to comply with his burden of showing entitlement to it.

5.      The petitioner lacked diligence in pursuing his state court post-conviction proceedings and his habeas relief.

6.     There were no extraordinary circumstances that prevented the petitioner from timely filing his habeas relief.

7.     The petitioner failed to establish actual innocence.

8.     The state court decision was based on a reasonable application of clearly established federal law, as determined by the United States Supreme Court, regarding the granting of a new trial based on the results on a mitochondrial DNA test that the petitioner describes as newly discovered evidence. 28 U.S.C. § 2254(d)(1).

9.     All state courts decisions in Petitioner's criminal case were based on a reasonable application of clearly established state and federal law.

10.     The state court decision was based on a reasonable determination of facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254 (d)(2).

11.     This Honorable Court lacks jurisdiction over the subject matter in the instant action.

12. The Second Amended Petition is a "second or successive" petition that has not been authorized by the First Circuit pursuant to 28 U.S.C. § 2244(b).

13.     This Honorable Court lacks jurisdiction over the appearing Respondents.

14.     The Petition fails to state a claim cognizable under any applicable federal or state statute.

15.     Petitioner has not been deprived of any federally protected right or privilege by the appearing Respondents.

16.     Petitioner did not comply with the pleading standard for his claims.

17.     Petitioner did not comply with Federal Rule of Civil Procedure 8 when drafting this Petition.

18.     Petitioner is not entitled to an evidentiary hearing since there is a fully developed State Court record, being that the State Court adjudicated Petitioner's new trial request on the merits.

19.     The appearing Respondents hereby reserve the right to amend the pleadings, to bring any other party, and/or to raise any other affirmative defense, according to the established procedure, that may arise as a result of the discovery.

20.     Appearing Respondents do not waive any other affirmative defense that may arise during discovery proceedings or upon good cause shown.

## REQUIREMENTS OF RULE 5 OF THE RULES GOVERNING
## SECTION 2254 CASES

1. In compliance with Rule 5 of the Rules Governing Section 2254 cases, Respondents are filing with this Answer documents mandated by said Rules, in English and Spanish languages.

2.     On this date, the English documents that were already translated and filed in parallel case *Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589 (FAB), are being filed. **Exhibits 1 - 34.** *See* Docket No. 66 (Order granting in part extension of time to answer and stating that "the documents that must accompany the respondents' answer are already in the possession of respondents' counsel" and referring to Civil No. 20-1589). In addition, Respondents will file a separate Motion for Extension of Time to file the remaining certified translations of the Spanish state court documents that have been filed with this answer, that are related to Meléndez-Serrano and that had not been filed in case Civil No. 20-1589. **Exhibits 35 - 46.**

**WHEREFORE**, the appearing Respondents respectfully request and pray the Court that the Second Amended Petition be dismissed, and judgment entered in favor of Respondents.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court, who will send notification of such filing to the parties subscribing to the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of November 2024.

<table>
<tr>
<td>

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretary of Justice

**SUSANA I. PEÑAGARÍCANO-BROWN**
Deputy Secretary in Charge of Civil Litigation

**JUAN C. RAMÍREZ ORTIZ**
Deputy Undersecretary in Charge of Civil Litigation

</td>
<td>

*s/ Pablo Tufiño-Soto*
Pablo Tufiño-Soto
USDC No. 304006
Department of Justice of Puerto Rico
Federal Litigation Division
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Email: ptufino@justicia.pr.gov
Phone: 787-721-2900 Ext. 1423

</td>
</tr>
</table>