### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN CARLOS MELÉNDEZ-SERRANO,** | |
| *Petitioner,* | **CIVIL NO. 20-1588 (FAB)** |
| v. | (28 U.S.C. § 2254) |
| **ANA ESCOBAR PABÓN, DOMINGO EMANUELLI-HERNÁNDEZ, VÍCTOR MALDONADO,** | |
| *Respondents.* | |

### RESPONDENTS' BRIEF IN COMPLIANCE WITH COURT ORDER AT DOCKET NO. 67 AND FOR DENIAL OF HABEAS RELIEF

**TO THE HONORABLE COURT:**

**COME NOW**, Ana Escobar Pabón, Domingo Emanuelli-Hernández and Víctor Maldonado ("Respondents"), without submitting to the Court's jurisdiction, and through the undersigned attorney, very respectfully **STATE** and **PRAY** as follows:

### I.    INTRODUCTION

On November 11, 2024, the Court ordered Juan Carlos Meléndez-Serrano ("Meléndez-Serrano" or "Petitioner") and Respondents to file their respective legal briefs no later than December 2, 2024. [1] Subsequently, the parties jointly requested an extension of time, until December 6, 2024, to file their briefs which the Court granted[2].

On this date, Respondents file their Brief requesting the denial of Habeas Relief. Respondents argue that: (1) Petitioner is not entitled to a new trial; (2) the Court must not disregard the jury's duty as fact finder, discarding their unanimous verdict by granting habeas relief to the Petitioner; (3) Petitioner is not entitled to habeas relief because the PRCOA's decision was based on reasonable determination of facts; and (4) Petitioner's

---

[1] Docket No. 67.

[2] Docket Nos. 71 & 72.

alleged causes for granting habeas relief do not comply with the new trial standard.

Importantly, as it is related to the same state court proceedings and legal issues, throughout this brief, Respondents refer to the parallel habeas corpus case, *Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589 (FAB), in which this Court recently granted Ramos-Cruz's section 2254 petition for a new trial and the respondents appealed to the United States Court of Appeals for the First Circuit ("First Circuit").[3]

Respondents maintain that, after consideration of the instant Brief, the Court will be able to conclude that Petitioner failed to meet the requirements of the new trial and the Habeas relief standard. Thus, based on the ensuing arguments, Petitioner's request for Habeas relief must be denied.

## II.    PROCEDURAL BACKGROUND

Petitioner was found guilty by a unanimous jury verdict in 1992 and, subsequently, convicted for the murders of Ms. Haydeé Maymí-Rodríguez and her two children in their duplex located in Trujillo Alto. Haydeé was found dead in the bathtub, while her two children, Eduardito and Melissa, were found in a refrigerator and a freezer, respectively.[4] On October 27, 2020, petitioner, *pro se*, filed a petition for habeas relief under 28 U.S.C. § 2254.[5] After obtaining legal representation, Petitioner filed subsequent amended petitions; lodging his *Second Amended Petition for Relief from a Conviction or Sentence by a Person in State Custody* ("Second Amended Petition") on August 8, 2024.[6]

On August 22, 2024, Respondents filed *Motion to Dismiss Second or Successive Habeas Corpus Petition*, arguing that Meléndez-Serrano's Second Amended Petition is a "second or successive" petition that has not been authorized by the First Circuit pursuant to 28 U.S.C. § 2244(b).[7] Respondents argued that Meléndez-Serrano's 2003 federal habeas petition, which had been dismissed with prejudice, was "second or successive"

---

[3] USCA Case Number 24-2009.

[4] Docket No. 47, at 2 & 21.

[5] Docket No. 2.

[6] Docket Nos. 36 & 47.

[7] Docket No. 51.

because it challenged the same 1992 judgment as the first. *See Meléndez-Serrano v. El Pueblo de Puerto Rico*, No. CIV. 03-1050 (PG), 2004 WL 329303 (D.P.R. Jan. 28, 2004).[8] Petitioner filed his opposition and Respondents replied.[9] On October 28, 2024, this Court issued an Opinion and Order denying Respondents' motion to dismiss.[10] In addition, the Court ordered Respondents to file an answer to the Second Amended Petition no later than November 4, 2024, along with the Commonwealth Courts' 1992 trial transcripts, post-conviction pleadings, appellate dispositions, and Rule 192.1 transcripts which have already been filed in *Ramos-Cruz*, Civil No. 20-1589.[11] After a request for extension of time was granted, on November 14, 2024, Respondents filed their *Answer to Second Amended Petition* and the documents ordered by the Court.[12]

Petitioner's Second Amended Petition invites this Court to conclude that the mtDNA result that excluded him as a donor of the pubic hairs recovered from the victim's underwear, by itself, proves that he was not present at the murder scene. Also, Petitioner attempts to convince this Court that the determinations of facts of the Puerto Rico Court of Appeals' ("PRCOA") judgment,[13] dated March 13, 2019, which revoked the Court of First Instance's ("CFI") decision to grant Antonio Ramos-Cruz and him[14] a new trial, were unreasonable because they concluded that said mtDNA results had no material importance. The PRCOA reached its determination of facts because, after an evaluation of the totality of the evidence, it found that there was circumstantial independent evidence of Petitioner's presence at the murder scene, where two (2) witnesses placed him at the approximate time that the murders took place. Further, the PRCOA found that the mtDNA result, by itself, was not sufficient evidence to

---

[8] Docket No. 51-1 & 51-2.

[9] Docket No. 60 & 63.

[10] Docket No. 64.

[11] *Id*. at 25-26.

[12] Docket No. 68.

[13] Docket No. 68-12, pp.2-28.

[14] Ramos-Cruz filed a habeas corpus petition on the same grounds as Petitioner in the instant case. *See Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589 (FAB).

exonerate him of a unanimous jury's decision to convict him. Indeed, contrary to Petitioner's beliefs, the mtDNA result does not exonerate him from the murder conviction.

### III.     STANDARD FOR § 2254 HABEAS CORPUS PETITIONS

Under 28 U.S.C. § 2254, courts shall entertain habeas corpus applications on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. A habeas petition may not be granted unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). The burden of proof falls on the petitioner. *Id.* (citing *Woodford*, 537 U.S. at 25).

Under the *Antiterrorism and Effective Death Penalty Act*'s ("AEDPA") deferential standards, error by a state court, without more, is not enough to warrant federal habeas relief. *Cronin v. Commissioner of Probation*, 783 F.3d 47, 50 (1st Cir. 2015) (citing *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc)). A state court's findings on factual issues "shall be presumed to be correct" and the petitioner bears the burden of disproving factual holdings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir. 2002). "The writ of habeas corpus ordinarily will not lie solely to correct alleged errors in evidentiary rulings." *Allen v. Snow*, 635 F.2d 12, 15 (1st Cir. 1980), cert. denied, 451 U.S. 910 (1981).

Federal habeas relief is available **only to review constitutional error.** *Subiloski v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982) (citing *Salemme v. Ristiano*, 587 F.2d 81, 87 (1st Cir. 1978)). (emphasis added). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner "must show that the state court's ruling ... was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* 562 U.S. at 103. Merely to claim that new evidence casts doubt, even grave doubt, on the correctness of a conviction is not a ground for relief on collateral attack. *Conley v. U.S.*, 323 F.3d 7, 14 (1st Cir. 2003) (citing *Herrera v. Collins,* 506 U.S. 390, 400 (1993)).

"To rise to constitutional magnitude, such an error must 'so infuse the trial with inflammatory prejudice as to render a fair trial impossible.'" *Allen*, 635 F.2d at 15 (quoting *Salemme v. Ristiano*, 587 F.2d at 86). It is well settled that upon habeas corpus "the court will not weigh the evidence." *Herrera*, 506 U.S. at 401(quoting *Hyde v. Shine*, 199 U.S. 62, 84 (1905)). Federal courts, in habeas proceedings, will not engage in second guessing. *Grace*, 586 F.2d at 881. "As the writ of habeas corpus does not perform the office of a writ of error or an appeal, [the facts establishing guilt] cannot be reexamined or reviewed in this collateral proceeding." *Id*. (quoting *Ex parte Terry*, 128 U.S. 289, 305 (1888)).

Adherence to the principles and requirements of federal habeas corpus "serves important interests of federalism and comity." *Woods v. Donald*, 575 U.S. 312, 316 (2015). AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Id*. (quoting *Woodford*, 537 U.S. at 24). When reviewing state court determinations on collateral review, federal judges must "afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. Federal habeas review exists as "a guard against extreme malfunctions in the state criminal justice systems, not as a substitute for ordinary error correction through appeal." *Id*. (quoting *Harrington*, 562 U.S. at 102-103). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). Given that the trial court possesses a "wide degree of discretion," habeas relief is to be "sparingly used." *Campbell v. Fair*, 838 F.2d 1, 4 (quoting *Grace v. Butterworth*, 586 F.2d 878, 880 (1st Cir. 1978).

In the instant case, Petitioner based his petition in that the PRCOA's determinations of facts were unreasonable and that said Court misapplied the new trial standard requirements. Nonetheless, it is Petitioner who has the burden to prove **with clear and convincing evidence** that the PRCOA's determination of facts was unreasonable and that it misapplied the new trial standard, as mandated by 28 U.S.C. § 2254(e)(1) and the First

Circuit in *Ouber*, 293 F.3d at 27. However, Petitioner failed to meet said burden of proof, and did not comply with the elements required by the new trial standard. Petitioner claims that the new mtDNA evidence casts doubt on the correctness of his conviction. Nonetheless, Petitioner fails to establish, with clear and convincing evidence, how the mtDNA test trumps testimonies of witnesses that putted him in the crime scene. But even if this Court where to rule that an error was made in the PRCOA's determinations of facts, such an error would not be a ground for relief on collateral attack. *See Conley*, 323 F.3d at 14. Since Petitioner has failed to meet his burden of proof to establish the alleged unreasonableness of the PRCOA's determination of facts, this Court must afford the deference to state courts that the habeas standard mandates and, thus, deny his Habeas petition.

## IV.    DISCUSSION

**A.  Petitioner is not entitled to a new trial.**

### 1.  Petitioner is not entitled to a new trial, since the PRCOA's decision was based on reasonable determinations of facts.

A state court's factual findings "are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." *Companiono v. O'Brien*, 672 F.3d 101, 109 (1st Cir. 2012). *See also*, 28 U.S.C. § 2254(e)(1). Thus, Petitioner's burden in this regard is "heavy," and if it is not met, "a federal habeas court must credit the state court's findings of fact—and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002). A state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." In other words, "the ultimate question is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Zuluaga v. Spencer*, 585 F.3d 27, 30 n. 1 (1st Cir. 2009*). Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The federal habeas court may not characterize the state court factual determinations as unreasonable "merely because [it] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

The federal habeas court "faced with a record ... that supports conflicting inferences must presume ... that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Linton v. Saba*, 812 F.3d 112, 123 (1st Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)); see,

*Housen v. Gelb*, 744 F.3d 221, 226 (1st Cir. 2014) ("[A] habeas court may not freely reweigh competing inferences

but must accept those reasonable inferences that are most compatible with the jury's verdict." *See also, Hurtado*

*v. Tucker*, 245 F.3d 7, 19–20 (1st Cir. 2001) ("[A]s a general rule, federal courts should be particularly cautious

about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the

evidence is sufficient...."). "The actual resolution of the conflicting evidence, the credibility of witnesses, and the

plausibility of competing explanations is exactly the task to be performed by a rational jury, considering a case

presented by competent counsel on both sides." *Foxworth v. St. Amand*, 570 F.3d 414, 427 (1st Cir. 2009) (quoting

*Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003)). The habeas court accordingly "resolves all credibility

issues in favor of the verdict." *Morgan v. Dickhaut*, 677 F.3d 39, 47 (1st Cir. 2012).

> The Supreme Court has made it very clear that 'it is the responsibility of the jury-not the court-to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence **only if no rational trier of fact could have agreed with the jury.** What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.

*Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (emphasis added).

Given the existence of ample room for disagreement among reasonable people, "the inevitable

consequence of this settled law is that judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold." *Id.* When facing a record supporting conflicting inferences,

federal courts in habeas cases "**must presume-even if it does not affirmatively appear in the record-that the**

**trier of fact resolved any such conflicts in favor of the prosecution and <u>must defer to that resolution</u>.**" *Id.*

at 7. (emphasis added). As to whether the prosecution's theory was correct, juries and not courts get to decide

that question. *Id*. at 8.

Here, Petitioner argues that this Court should grant habeas relief based on his contention that the March

12, 2019, PRCOA judgment contains unreasonable determinations of facts. Specifically, the Petitioner claims that

the PRCOA's conclusion that the prosecution's theory of rape as the motive for the victim's murder was

unreasonable, and that the finding regarding the immateriality of the victim's underwear to the murder conviction was similarly unreasonable, particularly in light of the mitochondrial DNA ("mtDNA") test result. However, Petitioner is wrong.

First, it is important to note that the Petitioner's conviction was affirmed by the Puerto Rico Supreme Court ("PRSC") on January 26, 1999.[15] This judicial affirmation establishes the foundation of the conviction, making it a critical part of the procedural history. Second, the PRCOA's March 12, 2019, judgment, which overturned the CFI's decision to grant a new trial to the Petitioner and his co-defendant, Ramos-Cruz, reaffirmed the reasonableness of the conviction. The PRCOA concluded that, based on an independent and impartial examination of the evidence, there was sufficient evidence for a jury to infer the presence of all elements necessary to find the defendants guilty of first-degree murder. The PRCOA's judgment explicitly states:

> Our independent and impartial examination of the evidence presented has convinced us that **there was enough evidence for a jury to be able to infer <u>that all of the elements of murder in the first degree were present, and to connect the defendants to the crime</u>**. … Furthermore, two witnesses placed the defendants in the home of the victim at the approximate time at which another witness, the victim's next-door neighbor, heard screams of distress coming from the house of the deceased. Said time coincides with the time at which, according to the performed forensic analyses, the crime must have taken place.
> …
> Upon determining that the evidence presented by the Prosecution was sufficient in law for a jury, exercising its duty, **to find the [petitioner] guilty of classic first-degree murder**, we affirm the verdict.
> …
> The jury saw and heard the witnesses testify, adjudicated credibility of the testimonies, evaluated the evidence and unanimously found the [petitioner] guilty. In absence of passion, prejudice, partiality or manifest error, it is not our duty to intervene with said ruling.[16]

This reflects the PRCOA's clear stance that the jury's findings were supported by sufficient evidence and should not be disturbed. Thus, the PRCOA's conclusions were neither unreasonable nor unsupported by law.

In further consideration of the evidence, the PRCOA the testimonies of key witnesses who testified at the evidentiary hearing, including that of Roberto López Arroyo, a serologist from the Forensic Science Institute

---

[15] Docket No. 68-12, at 1. Respondents refer to page numbers of the Docket entry not Westlaw page numbers.

[16] Docket No. 68-12, pp.4-5 (emphasis added).

("FSI"), and Phillip Hopper, a DNA analyst at the SERI laboratory. López Arroyo, who in 2010 performed the microscopic analysis of the pubic hair found on the victim's underwear, testified that: (1) upon the defense's request, forensic analysis was performed on the pubic hair; (2) a DNA analysis could not be performed since no genetic material was found; and, (3) he performed the microscopic analysis of the pubic hair, comparing it with the Petitioner's sample, and concluded that the Petitioner was excluded as a donor of the hair. López Arroyo also testified regarding the mitochondrial DNA analysis, explaining that it supported his earlier findings, further confirming the Petitioner's exclusion as the donor of the pubic hair. He emphasized that both the mtDNA analysis and the microscopic analysis were equally reliable in excluding the Petitioner as the source of the hair.[17]

Mr. Phillip Hopper performed the mitochondrial DNA analysis on the pubic hairs sent by the FSI and prepared an Analytical Report dated September 13, 2016. The report concluded that the three pubic hairs found on the victim's underwear shared the same sequence, which was consistent with the victim's DNA. Upon comparing the pubic hairs with the petitioner's sample, Mr. Hopper determined that the Petitioner was excluded as the donor of the hairs. Furthermore, Mr. Hopper testified that if the results of the tests had indicated that the sequence of the pubic hairs matched the petitioner's DNA, such a finding, on its own, would not have been sufficient to definitively conclude that the petitioner was the perpetrator of the crime.[18]

Consequently, the PRCOA made the following determination of facts, after reviewing the mentioned testimonies:

(1)     The main conclusion of the new evidence is that the pubic hair had genetic material that, to a high degree of probability, belonged to the victim herself, since she is not ruled out as a donor.[19]

(2)     The pubic hairs had been cut and the victim's genital area was shaven as was abundantly demonstrated during the trial and in the hearing for new trial.[20]

---

[17] Docket No. 68-12, pp.7-8.

[18] *Id*.

[19] *Id*., at 26.

[20] *Id*.

(3)      The piece of underwear was only mentioned as one of several delivered to the ICF, where the semen test was carried out, leading to a negative result.[21]

(4)      The conditions and location of the underwear in the crime scene was unknown.[22]

(5)      The underwear belonged to the victim.[23]

(6)      The female lingerie, as a piece of evidence against the Petitioner, was not material with regards to the guilty verdict.[24]

(7)      The elements of the crime of homicide did not require demonstrating that the underwear was an article directly associated with the perpetration of the three murders.[25]

(8)      It was demonstrated that the wounds that caused the victims' deaths were caused with a knife,[26] and the underwear lacks relevance to prove the elements of the crime of murder, act of which the Petitioner was accused of and found guilty.[27]

Based on these determinations of facts, the PRCOA concluded that:

(1)      The Petitioner's theory and grounds on which he based his request for new trial failed to rebut, minimize or refute all the evidence weighed by the jury in the trial resulting in the verdict of guilty.[28]

(2)      As to the District Attorney's theory argued during the trial that consisted in that the motive of the murder was to have sexual relations with the victim, it was proven in the autopsy report that the victim defended herself from said act, based on the defensive wound on her hands.[29]

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

(3)      Having weighed all the evidence, the fact-finder considered all of the elements of the crime of murder to have been proven.[30]

(4)      From said evidence, the court could not determine that a different result from the guilty verdict would probably be reached.[31]

(5)      The new supplementary evidence combined with the facts proven during the trial prevent it from being established that the Petitioner was not at the scene of the crime, nor much less does it allow it to be decided that he did not have contact with the three victims.[32]

(6)      The results of the mtDNA test have no use to place the Petitioner outside of the scene of the crime.[33]

(7)      The new supplementary evidence does not satisfy the degree of relevance and sufficiency to rebut all the evidence submitted at trial.[34]

(8)      The results of the mtDNA does not exclude the victim as the donor of the hairs, thus the court was forced to conclude that the new supplementary evidence does not have the direct of proportional relationship to the main fact that the Petitioner seeks to prove, that he is excluded in an incontrovertible manner from being at the scene of the crime or from having contact with the victims.[35]

(9)      The Petitioner was not the donor of the genetic material (which was known since 2010 and is now corroborated), but this does not make his guilt less probable when considering the testimony and documentary evidence presented and proven at trial in its entirety.[36]

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 26-27.

[34] *Id.* at 27.

[35] *Id.*

[36] *Id.*

Furthermore, after an exhaustive examination of the evidence presented in the new trial hearing and a thorough review of the trial transcript, the PRCOA determined that the CFI had abused its discretion in granting new trial. The PRCOA concluded that the new evidence did not make the Petitioner's innocence more probable.[37] In its ruling, the PRCOA stated:

> [T]he CFI incurred in a clear and unequivocal abuse of discretion when granting the request for new trial filed by respondents. The decision that the court of first instance took was predicated on an incorrect weighing of the evidence since, as established above, it ignored important facts, did not evaluate the totality of the testimony, gave weight and value to irrelevant facts and ignored material and important facts. Therefore, based on the evidence that was presented in the new trial hearing, studied and analyzed along with the totality of the evidence submitted and adjudicated in the trial, the lower court lacked discretion to order a new trial. The motion for new trial is not a *new opportunity for convicts to reverse* a verdict.[38]

Finally, the PRCOA concluded that "a complete serene and dispassionate appraisal of the results of the mtDNA test as new evidence along with all the evidence submitted in the original trial, *does not make judgment in favor of [Petitioner] more favorable,* nor does it allow it to be inferred in any way that it could create in the fact-finder a reasonable doubt as to the guilt."[39]

It is important to note the PRCOA's consideration of the forensic microscopic hair analysis of the pubic hairs recovered from the victim's underwear. This analysis, performed in 2010 at the defense's request,[40] played a significant role in the court's assessment. During the Rule 192.1 evidentiary hearing, Mr. López Arroyo, Forensic Serologist II at the FSI, testified that the FSI was unable to conduct a DNA analysis due to the absence of genetic material in the pubic hairs.[41] As a result, a microscopic hair analysis was performed, comparing the victim's sample with the Petitioner's sample. Mr. López Arroyo concluded that the **Petitioner was excluded as a donor of the hairs analyzed**.[42]

---

[37] *Id.*, at 18-28.

[38] *Id.*, at 27-28.

[39] *Id.* at 27-28. (Emphasis in original).

[40] Docket No. 68-12, p.7.

[41] *Id.*

[42] *Id.*

In addition to the microscopic hair analysis, the PRCOA also considered Mr. López Arroyo's testimony regarding the mitochondrial DNA analysis. He explained that while "the mitochondrial DNA is more conclusive, because with the microscopic analysis one **cannot determine who the hair belongs to**, it only excludes. **The mitochondrial test can reveal the source of the hair.** … For purposes of excluding there is no difference between mitochondrial and hair comparison and hair comparison analysis."[43]

The Court continued its analysis by reviewing the testimony of Mr. Hopper,[44] who performed the DNA analysis on the hair samples provided by the FSI and prepared the report titled *Analytical Report of September 13, 2016*.[45] Mr. Hopper's conclusion that the Petitioner was excluded as the donor of the hairs found on the victim's underwear was a central element of the Court's review.[46] Additionally, the PRCOA considered Mr. Hopper's testimony regarding the nature of the mitochondrial DNA. He explained that mitochondrial DNA is inherited through the maternal line and remains identical for individuals within the same matrilineal line for up to 100 generations. Therefore, mitochondrial DNA analysis cannot exclude anyone from the victim's maternal lineage,[47] meaning that the victim herself could not be excluded as a donor of the pubic hairs.[48] This consideration was integral to the PRCOA's overall evaluation of the evidence presented.

After weighing the evidence, the PRCOA made the following determination of fact: "the main conclusion of the new evidence is that the pubic hair had genetic material that, to a high degree of probability, belonged to the victim herself, since she is not ruled out as a donor."[49] This determination was made following a careful and thorough review of the testimonies of the witnesses who conducted the pubic hair analyses. Given the detailed

---

[43] *Id.* (Emphasis in original).

[44] *Id.*

[45] *Id.*

[46] *Id.*, at 7, 8.

[47] *Id.*, at 8.

[48] *Id.*

[49] *Id.*, at 26.

consideration of the evidence and expert testimony, it follows that the PRCOA's determination regarding the new evidence was both reasonable and supported by the facts presented.

It should be noted that, in the parallel case to the instant petition, *Antonio Ramos-Cruz v. Domingo Emanuelli, et al.*, Civil No. 20-1589 (FAB), this Court issued an Opinion and Order denying respondents' motion to dismiss.[50] In footnote 8 of the Opinion and Order, the Court said the following about microscopic hair examination:

> In 2009, the National Academies of Science determined that 'testimony **linking microscopic hair analysis with a particular defendant** is highly unreliable. In cases where there **seems to be a morphological match** (based on microscopic examination), it must be confirmed using mtDNA analysis; microscopic studies alone are of limited probative value." Nat'l Academies of Sci., *Strengthening Forensic Science in the United States* (2009); *see* Smuel D. Hodge, Jr. and Amelia Holjencin, *A post-Morten Review of Forensic Hair Analysis: A Technique Whose Current Use is Criminal Investigations in Hanging on by a Hair*, 64 St. Louis L.J. 219, 228 (2020) ("The death knell of microscopic hair analysis in a forensic context occurred in April 2015 when the FBI issued a bombshell admission that members of its staff had provided inaccurate testimony dealing with microscopic hair analysis for more than twenty years thereby **leading to the conviction of innocent people**.").[51]

From a reasonable reading of footnote 8, it can be concluded that the authorities cited by this Court are discussing the validity of microscopic hair examination in cases **where it has led to convictions**. However, this is not the situation in the present case. As testified by Mr. López Arroyo, and as the PRCOA considered in its analysis, both the microscopic hair examination and the mtDNA test **excluded the Petitioner as the donor of the pubic hairs**. Consistent with the recommendations of the cited authorities, both the microscopic examination and the mtDNA analysis reached the same conclusion: the Petitioner was excluded as a donor of the hairs examined.

**This determination does not efface the totality of the evidence presented to the jury, on which their guilty verdict was based.** Any invitation for this Court to question the jury's thought process, credibility assessments, evidence evaluation and verdict must be rejected as mandated by the Supreme Court in *Cavazos*,

---

[50] Civil No. 20-1589 (FAB), Docket No. 61.

[51] *Id.*, at 14, n.8 (emphasis added).

565 U.S. at 2, which emphasizes that it is not the role of appellate courts to reevaluate the credibility of witnesses or the jury's findings. Particularly, said case held the following:

> [O]nce the jury has heard the evidence, and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a jury's thought processes, see McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Fed.Rule Evid. 606(b) (stating that jurors are generally incompetent to testify concerning jury deliberations); through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.

*Cavazos*, 565 U.S. at 2; *see also U.S. v. Tormes-Ortiz*, 734 F.Supp.573, 575-76 (D.P.R. 1990) (citing *U.S. v. Powell*, 469 U.S. at 67); *U.S. v. Powell*, 469 U.S. 57, 67 (1984).

Therefore, Petitioner's contention that the PRCOA unreasonably applied the new trial standard does not hold water. First, Petitioner was aware since 2010 that he was excluded as the donor of the hairs found in Maymí's underwear, and the mtDNA results merely confirmed what was already known. Second, given that there was evidence already excluding the Petitioner as the donor of the pubic hairs, the mtDNA results are cumulative and not determinative of his innocence. Third, the jury was already aware of the existence of the hairs that were not analyzed, that no semen was recovered from the victim's underwear, and they heard the testimonies of witnesses Babi and Joíto, who placed the Petitioner at the scene at the time the victims were murdered. In light of these circumstances, it is clear that the jury, through its deliberative processes, weighed the evidence, assessed the credibility of the witnesses, and found the Petitioner guilty of murder. As such, Petitioner cannot establish the third and final element of the new trial standard, as it is not probable that, based on the totality of the evidence, including the mtDNA results, an acquittal would result upon retrial.

As to Petitioner's claim that habeas relief must be granted based on the prosecutor's failure to establish his rape motive theory, it is important to note that it is well established that the elements of murder do not require proof of motive. In Puerto Rico, murder is defined as the "killing of a human being with malice aforethought." *United States v. Báez Martínez*, 950 F.3d 119, 128 (D.P.R. 2020) (quoting *Pueblo v. Lucret Quiñones*, 11 P.R. Offic. Trans. 904, 927, 929 (1981)); *see also*, 33 L.P.R.A. § 4001 (repealed). First-degree murder includes any "willful, deliberate and premeditated killing." *Id*. The Supreme Court of Puerto Rico has explained that "[t]he

concept of <u>malice aforethought</u> implies the absence of just cause or excuse in causing death and implies, also, the existence of intent to kill a fellow human being." *Id.* (quoting *Pueblo v. Rivera-Alicea*, 125 P.R. Dec. 37, 1989 WL 608548 (1989) (English translation) (emphasis in original)). Additionally, deliberation is a required element for first-degree murder. *Pueblo v. Negrón Ayala*, 171 D.P.R. 407, 419 (2007) (translation ours).

In *Pueblo v. Negrón Ayala*, 171 D.P.R. at 419-420, the PRSC held the following as to the elements of first-degree murder:

> Any period of time, no matter how short, will be sufficient for deliberation to take place. We have even maintained that this period can be as fast as thought. *See*, *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 368 esc. 59 (1991). That is, both deliberation and premeditated malice do not necessarily require a prior plan or that they be conceived long in advance of the events. *Pueblo v. Echevarría Rodríguez I*, supra, p. 368. A certain period of time does not have to elapse between the intention to kill and the death itself, since both elements can be conceived at the time of the attack. *See*, *Pueblo v. González Pagán*, supra, p. 689; *Pueblo v. López Rodríguez*, 101 D.P.R. 897, 899 (1974). To this end we have expressed that 'premeditation [and deliberation] can be formed in an instant before the act and can exist... regardless of the speed with which the act was performed.'

*Negrón Ayala*, 171 D.P.R. at 419-420 (translation ours).

The letter of Article 83 of the Puerto Rico Criminal Code of 1974, P.R. Laws Ann. tit. 33, § 4002 (repealed),[52] applicable in the instant case, reads:

> **Any murder perpetrated by means of** poison, stalking or torture, and all types of treacherous, deliberate and premeditated death, or committed by perpetrating **or attempting any** aggravated arson, **rape**, sodomy, robbery, burglary, kidnapping, havoc, mutilation or escape constitutes murder in the first degree, with all the others being in the second degree.

P.R. Laws Ann. tit. 33, § 4002 (repealed) (translation ours) (emphasis added).

From both the letter of the law and the evidence presented to the jury, it is clear that the victim defended herself from an attempt of rape, as evidenced by the wounds on her hands.[53] The legislature has made clear that the element of attempted rape is sufficient to support a conviction of first-degree murder. The jury, having heard and reviewed this evidence, concluded that the Petitioner was guilty of first-degree murder. There is ample

---

[52] This repealed article is referenced since it was part of the applicable Penal Code at the time of the crimes to which Petitioner was convicted.

[53] Docket No. 68-12, at 26.

evidence in the record, as presented at trial, to support this finding. Therefore, the lack of a conclusive rape motive does not undermine the conviction, as the evidence of attempted rape and the resulting self-defense injuries were sufficient to establish the Petitioner's guilt beyond a reasonable doubt.

Federal courts "have long recognized that 'a mere error of state law' is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982)). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir. 1983). A claim grounded on issues of state law provides no basis for federal habeas relief because a violation of a state statute or rule of procedure is not a violation of the federal constitution. *Engle*, 456 U.S. at 120–21; *Verne v. Jones*, 2017 WL 1190386, at *11 (N.D. Fla. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1196440 (N.D. Fla. Mar. 29, 2017).

Petitioner's entire argument rests on the premise that the genetic test results from the pubic hair samples found in Maymí's clothing somehow completely rule out the possibility of his presence at the crime scene, and thus his involvement in the murders. He contends that these test results negate any possibility of establishing his presence at the time and place of the crimes. However, as the PRCOA correctly held in its decision, the mtDNA evidence does not make the Petitioner's guilt less probable when considering the entirety of the testimony and documentary evidence presented at trial. The only conclusive takeaway from the mtDNA results is that the hair sample examined did not belong to the Petitioner. **It does not rule out anything further**. Importantly, the jury heard and evaluated the testimony of two witnesses who placed the Petitioner at the scene of the murders at the approximate time they occurred. Therefore, the mtDNA results do not alter the strong circumstantial evidence that was presented to the jury, which ultimately led to their conviction of the Petitioner.

As to the reliability of the testimonies, the record amply demonstrates that the witnesses were thoroughly cross-examined on matters related to the investigation and the circumstances surrounding their statements. The jury, after careful deliberation, unanimously credited the witnesses' credibility. The genetic test results do not undermine the witnesses' testimonies, as they only confirmed that the pubic hair samples did not belong to the

Petitioner. The judge who presided over the criminal case determined that such testimonies were legally sufficient to warrant submission to the jury, a decision that was subsequently upheld by multiple higher courts in the Commonwealth of Puerto Rico. These testimonies, the presiding judge's rulings, and the subsequent conclusions of the Puerto Rico appellate courts in the petition-for-new-trial process are entitled to a high degree of deference under current habeas doctrine. This deference represents a substantial bar, which the Petitioner has not, and will not, be able to overcome. Accordingly, Petitioner's habeas petition should be denied.

**2.      Petitioner is not entitled to a new trial, since he has failed to establish one or more of the elements required by *U.S. v. Wright*.**

A request for new trial on the basis of newly discovered evidence will not ordinarily be granted unless the moving party demonstrates that: "(1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial to the defendant." *U.S. v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980) (citing *Pelegrina v. United States*, 601 F.2d 18, 20-21 (1st Cir. 1979)). Courts may deny the request for a new trial if it finds that any one of these requirements is lacking. *Id*.

Courts will affirm the denial of a new trial unless the court that took the determination manifestly abused its discretion; "the court's findings of fact will not be overturned **unless they are without any support in the record**." *Id*. (citing C. Wright & A. Miller, *Federal Practice and Procedure*, § 559, at 541-42 (1969)). (emphasis added). In order to assess newly discovered evidence, courts will conduct "an evaluation of the new evidence in juxtaposition to the evidence actually admitted at trial." *United States v. Josleyn*, 206 F.3d 144, 157 (1st Cir. 2000). The newly discovered evidence will be examined "**within the context of the record as a whole**, not on the basis of wishful thinking, rank, conjecture, or unsupportable surmise." *United States v. Martínez-Mercado*, 261 F. Supp. 3d 293, 298-99 (D.P.R. 2017, Besosa, J.) (citing *U.S. v. Natanael*, 938 F.2d 302, 314 (1st Cir. 1991)). (emphasis added). "Where defendants have received a full and fair factual review in the state courts, the federal courts, in habeas proceedings, will not engage in second guessing." *Subilosky*, 689 F.2d at 9 (quoting *Grace v. Butterworth*,

586 F.2d 878, 881 (1st Cir. 1978)).

In order to prevail on a request for new trial, materiality of the new evidence must be shown. *Wright*, 625 F.2d at 1019. New evidence is material when it has the potential to "alter the outcome of the lawsuit under the applicable legal tenets." *United States v. Hernández-Rodríguez*, 443 F.3d 138, 145 (1st Cir. 2006).

Since all prongs must be met in a request for new trial based on newly discovered evidence, Respondents only need to establish that one prong is not satisfied. Here, the Petitioner fails to meet the third and fourth requirements of the new trial standard, as he cannot establish that the mtDNA would likely result in an acquittal upon retrial.

Regarding the third prong, the mtDNA results concerning the hairs found on the victim's underwear are immaterial. The jury convicted the Petitioner based on the testimony of two (2) witnesses who placed him at the scene of the crime at the approximate time that the FSI pathologist testified the occurred. The underwear and the evidence found within it are irrelevant because the murders were committed by knife wounds, not by any actions related to pubic hairs. Therefore, the mtDNA results do not alter the central evidence on which the jury based its verdict.

As to the fourth prong, the fact that the mtDNA result excludes the Petitioner as a donor of the pubic hair found in the victim's underwear does not exclude his presence at the crime scene, nor does it automatically imply a different verdict from a jury. Petitioner grounds his request for habeas relief on the belief that the mtDNA test results somehow categorically and completely rule out the possibility of his presence at the scene of the crime, thereby excluding him as the perpetrator.[54]

In reality, the only conclusive finding from the mtDNA test is that the pubic hair sample examined did not belong to the Petitioner. In fact, the mtDNA results include the victim herself, along with her entire matrilineal family, as potential donors of the hair. Moreover, the mtDNA result does not negate the eyewitness testimony or the totality of the evidence that the jury considered in reaching its unanimous guilty verdict. The jury heard and

[54] Docket No. 47.

evaluated testimony from two (2) eyewitnesses who placed Petitioner at the scene of the murders at the approximate time they occurred. Petitioner, through his counsel, thoroughly cross-examined these witnesses regarding the investigation and the circumstances of their testimony. However, over 20 years later, Petitioner seeks to cast doubt on the credibility of the testimony that was heard and believed by a unanimous jury, which assessed everything from the content of the statements to the witnesses' demeanor. Therefore, since Petitioner has failed to establish that the mtDNA would likely result in an acquittal upon retrial, his request for habeas relief must be denied.

### 3.    The District Court must not disregard the jury's duty as fact finder, discarding their unanimous verdict by granting Habeas relief to the Petitioner.

> Juries are essential to judicial independence. Without juries, courts would have little occasion or authority to interpret the Constitution. Without juries, judges become glorified hearing officers whose contributions to society could not possibly justify grand courthouses, courtrooms, or judicial staff. Without juries, life-tenured judges could be replaced by an Article I tribunal whose terms are dependent upon the executive. … Without juries, true separation of power collapses and the administration of justice is left to the popularly elected branches.

*United States v. Luisi*, 568 F.Supp.2d 106, 116-17 (D. Mass. 2008).

Juries, as citizens drawn from all walks of life, are more likely to discover the truth than a single fact-finder. *Id.*, at 118 (*citing In re United States Fin. Sec. Litig.*, 609 F.2d 411, 431 (9th Cir. 1979) ("[N]o one has yet demonstrated how one judge can be a superior fact-finder to the knowledge and experience that citizen-jurors bring to bear on a case. We do not accept the premise … 'that a single judge is brighter than the jurors collectively functioning together.'")). While a judge's years on the bench may serve well for resolving legal issues, "juries bring to bear the values, common sense, and a fresh perspective that only come from life experience outside the courtroom." *Id.* (citing *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("The purpose of a jury is … to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge.")).

The mtDNA test results in no way undermine the testimonies of the witnesses or the credibility that the jury assigned to those testimonies, as the test results only established that the pubic hair samples did not belong to Petitioner. The judge who presided over the case determined that the testimonies were legally sufficient to

submit the case to the jury, a decision which was subsequently upheld by multiple higher courts in the Commonwealth of Puerto Rico. These testimonies, the rulings of the presiding judge, the jury's verdict, and the subsequent conclusions of the courts of Puerto Rico during the appellate and petition-for-new-trial process are entitled to a very high degree of deference under current habeas doctrine.

This Court, therefore, should not interfere with the unanimous guilty verdict rendered by the jury who, in evaluating all the evidence—including witnesses' testimonies—assessed the weight of that evidence, the credibility of the witnesses and reached their verdict. Given these considerations, Petitioner's request for habeas relief must be denied.

4. **The Court erred by granting habeas relief in *Ramos-Cruz v. Emanuelli-Hernández et al.*, 20-01589, and must not reach the same conclusion in the instant case.**

Respondents assert that the Court's decision in *Ramos-Cruz v. Emanuelli-Hernández* et al., 20-01589, granting habeas relief under 28 U.S.C. § 2254, was based on a misapplication of the legal standards governing federal habeas review. The decision to grant relief in that case was an overreach that improperly substituted the Court's judgment for that of the jury and state courts, and it undermined key principles of federalism, finality, and respect for state adjudications. Given that the circumstances of the current case are equivalent to those in *Ramos-Cruz*, this Court should not follow that decision, as it represented a misinterpretation of the applicable standards and an improper intervention in the state's criminal justice system.

First, it is important to recognize that AEDPA demands extraordinary deference to state court decisions, particularly when the state courts have fully and fairly considered the issues. As codified in 28 U.S.C. § 2254(d), federal habeas relief is available only when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented." This standard is explicitly designed to ensure respect for state court decisions and, as the Supreme Court emphasized in *Harrington v. Richter*, 562 U.S. 86, 105 (2011), it is "highly deferential." In *Ramos-Cruz*, the Court erred by disregarding this standard and substituting its own judgment for that of the jury and the state courts, which had reasonably concluded that the evidence presented

at trial was sufficient to support the conviction. This type of reevaluation of the evidence is contrary to the principles outlined in AEDPA, which emphasizes that habeas review is not a vehicle for relitigating state court cases.

Second, the *Ramos-Cruz* decision encroached upon the role of the jury, the constitutionally designated fact-finder. Under the well-established standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), federal courts must uphold a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Both in *Ramos-Cruz* and in the instant case, the jury's verdict was supported by substantial evidence, including eyewitness testimony and forensic evidence. The state courts, through multiple levels of review, affirmed the jury's verdict. This Court's decision in *Ramos-Cruz* to reweigh the evidence and reconsider the credibility of the witnesses—matters that are squarely within the jury's province— was an inappropriate overstep that disregarded the fundamental role of the jury as the fact-finder. In this case, as in *Ramos-Cruz*, the jury was entitled to evaluate the credibility of the witnesses, and this Court should not substitute its judgment for that of the jury, which made a unanimous determination of guilt based on the evidence presented at trial.

Third, the Court's decision in *Ramos-Cruz* to grant habeas relief based on procedural or evidentiary errors misapplied the harmless error standard established in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Under *Brecht*, habeas relief is only warranted if an error had a "substantial and injurious effect or influence" on the jury's verdict. The state courts, after thoroughly reviewing the case, found that any alleged errors were harmless. This conclusion, in line with *Brecht*, is entitled to substantial deference under AEDPA. In *Ramos-Cruz*, as in this case, the petitioners failed to demonstrate with clear and convincing evidence that the alleged errors had any substantial effect on the trial's outcome. By granting habeas relief despite the lack of any demonstrable constitutional violation or error that affected the jury's verdict, the Court in *Ramos-Cruz* misapplied the harmless error standard and inappropriately intervened in the state court's finding of harmlessness. The same mistake should not be made in this case.

Finally, the *Ramos-Cruz* decision disregarded AEDPA's core purpose: to prevent federal habeas review from becoming a routine means of relitigating state court decisions. As the Supreme Court made clear in

*Harrington*, 562 U.S. at 102-03, AEDPA's purpose is to prevent federal courts from substituting their judgment for that of the state courts unless there has been a constitutional violation or an unreasonable application of federal law. In *Ramos-Cruz*, there was no clear constitutional violation or unreasonable application of federal law, yet the Court granted habeas relief, thus eroding the finality of the state court's decision and undermining the principles of comity and federalism that AEDPA is designed to protect. The Court should not err in the same way in the instant case.

In sum, Petitioner respectfully argues that the *Ramos-Cruz* decision was an unwarranted intrusion into state court proceedings and a misapplication of AEDPA's standards. By substituting its own judgment for that of the jury and the state courts, the Court in *Ramos-Cruz* disregarded the deference owed to state court decisions under AEDPA. Given that the circumstances in the instant case are virtually identical to those in *Ramos-Cruz*, the decision to grant habeas relief in *Ramos-Cruz* should not be applied here. This Court should conduct a careful, independent analysis of the current petition and deny habeas relief in accordance with AEDPA's high standards of deference and respect for state court adjudications.

## V.    CONCLUSION

Petitioner has clearly failed to establish that he is entitled to habeas relief, as he has not provided the clear and convincing evidence necessary to demonstrate that the PRCOA's determination of facts was unreasonable, nor has he shown that the mtDNA results will probably result in an acquittal upon retrial. Petitioner's arguments merely reflect his own view of the facts and the proceedings, but as established by the relevant jurisprudence, such subjective disagreement is insufficient. Petitioner was required to present evidence that is clear and convincing enough to overcome the deference traditionally afforded to jury findings and to the factual determinations made by the state courts. As the cases cited in this brief illustrate, this is a high bar that Petitioner has failed to meet.

Moreover, the Petitioner's claim under the new trial standard also fails. As the Court has held in *Wright*, 625 F.2d 1017, Petitioner did not satisfy a single prong of the new trial requirements, which led the PRCOA to rightly deny his request for new trial. Petitioner's failure to meet any of these essential criteria further weakens his

argument for habeas relief.

It is also important to consider the broader context of Petitioner's request, particularly in light of the Court's previous ruling in *Ramos-Cruz*. The decision in *Ramos-Cruz* involved a misapplication of the legal standards under AEDPA, as well as an improper reweighing of the evidence and a disregard for the substantial deference owed to state court determinations. In the instant case, the factual circumstances are virtually identical, and the reasoning in *Ramos-Cruz* should not be applied. The Court's decision in *Ramos-Cruz* undermined the principles of federalism, finality, and respect for state adjudications, and this Court should not follow that decision in this case. The jury in this case, just as in *Ramos-Cruz*, carefully considered the evidence, evaluated the credibility of witnesses, and reached a unanimous guilty verdict. The principles of deference and finality, particularly under AEDPA, demand that this Court not substitute its judgment for that of the jury or the state courts.

In sum, Petitioner's habeas relief request seeks an improper review and reversal of a unanimous jury verdict. The jury, having heard the testimonies of the witnesses, observed their demeanor, and carefully weighed all the evidence—including the existence of the pubic hairs found in the victim's underwear that were not submitted for scientific testing—returned a guilty verdict. This process, central to our legal system, should not be lightly dismissed, particularly when the Petitioner has failed to meet the stringent requirements for habeas relief. For the reasons discussed above, and in consideration of the clear deference due to state court findings and jury verdicts, this Court must **DENY** Petitioner's request for habeas relief.

**WHEREFORE**, the appearing Respondents respectfully request and pray that the Court denies the Second Amended Petition for Habeas relief, and enter judgment in favor of Respondents.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have sent a copy to the petitioner to his addresses of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 6th day of December 2024.

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretary of Justice

**SUSANA I. PEÑAGARÍCANO-BROWN**
Deputy Secretary in Charge of Civil Litigation

**JUAN C. RAMÍREZ ORTIZ**
Deputy Undersecretary in Charge of Civil Litigation

*s/ Pablo Tufiño-Soto*
Pablo Tufiño-Soto
USDC No. 304006
Department of Justice of Puerto Rico
Federal Litigation Division
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Email: ptufino@justicia.pr.gov
Tel.: 787-721-2900 Ext. 1423